# BERLIN BATTING CAGES, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF BERLIN (AC 22282)

Foti, Flynn and West, Js.

Argued December 3, 2002—officially released April 15, 2003

*E. Timothy Sullivan, Jr.*, for the appellant (defendant).

*Vincent T. McManus, Jr.*, for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendant, the planning and zoning commission of the town of Berlin (commission), appeals from the judgment of the trial court sustaining the administrative appeal of the plaintiff, Berlin Batting Cages, Inc. On appeal, the commission claims that the court improperly (1) denied its motions to dismiss because the appeal was moot and because the plaintiff failed to exhaust its administrative remedies, (2) permitted the plaintiff to amend its complaint and (3) concluded that it lacked a legal basis on which to deny the plaintiff's site plan application. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues raised in the commission's appeal. On June 12, 1996, the plaintiff corporation, which owns real property in Berlin, filed with the commission an application seeking site plan approval to construct a go-cart track on the rear portion of its property.[1] The plaintiff's original application

---

[1] The subject property is located partially in zones designated by the commission as general commercial (GC-1) and residential (R-15). The stated purpose of regulations applicable to GC-1 districts is "[t]o accommodate small scale commercial uses on property that benefit from and are appropriate for a highway location in such manner so as to be compatible with

sought approval to construct a track for use by gasoline powered go-carts. On July 14, 1996, the commission, reasoning that the application did not conform to certain zoning regulations, denied the application.

On July 29, 1996, the plaintiff appealed from the commission's denial to the Superior Court.[2] The court later granted the plaintiff's request to amend its appeal, thereby permitting the plaintiff to challenge the validity of the regulations on which the commission relied in denying the application. The court conducted a hearing and, on May 14, 1999, issued a memorandum of decision in which it reversed the commission's decision. The court concluded that the commission had relied on regulations that were not valid. Accordingly, the court remanded the matter to the commission with direction to consider the application in light of only the regulations that were valid and in effect at the time of the filing of the application.

Both parties petitioned this court for certification to appeal from the trial court's decision.[3] On June 23, 1999, this court granted both of the petitions. On July 8, 1999, the plaintiff filed its appeal and, on July 9, 1999, the commission filed its appeal. On October 20, 1999, this court, sua sponte, ordered that the appeals be dismissed

---

nearby residential properties." The commission's GC-1 regulation provides in relevant part: "The following principal uses shall be permitted in the GC-1 district subject to Site Plan approval by the Planning Commission . . . o. Indoor or outdoor commercial recreation facilities including . . . go-cart facilities . . . ."

The stated purpose of regulations applicable to R-15, or single-family residential, districts is "to provide suitable areas for residential development appropriate to the environmental characteristics of the land and the character of the neighborhood. The districts are also intended to accommodate certain non-residential uses which are compatible with residential uses while preserving neighborhood character and property values."

[2] See General Statutes §§ 8-8 (b) and 8-9.

[3] See General Statutes §§ 8-8 (o) and 8-9; Practice Book § 81-1 et seq.

because they did not challenge an appealable final judgment.[4]

On July 19, 1999, after the parties had filed their appeals to this court, the plaintiff filed another site plan application with the commission. In that application, the plaintiff sought approval of a site plan to construct a track on which to operate electric powered, as opposed to gasoline powered, go-carts. On October 14, 1999, the commission approved the application.

On July 6, 2000, after having reconsidered the original application in accordance with the trial court's remand order, the commission again denied the application for approval to construct and to operate a track for the use of gasoline powered go-carts. On July 14, 2000, the plaintiff appealed to the Superior Court from the commission's denial.[5] On February 27, 2001, the commission filed a motion to dismiss the appeal on the ground that the court lacked jurisdiction to hear the appeal because the controversy between the parties was moot. The court denied the motion and denied the commission's subsequent motion to reconsider its denial. On May 8, 2001, the commission filed another motion to dismiss on the ground that the court lacked subject matter jurisdiction because the plaintiff had failed to exhaust available administrative remedies. The court also denied that motion.

After conducting a hearing, the court filed a memorandum of decision on June 6, 2001. The court sustained the plaintiff's appeal and directed the commission to issue the requested permit. The commission thereafter petitioned this court for certification to appeal. This court granted the petition and, on August 31, 2001, the

[4] This court reached its decision in light of the fact that the trial court had remanded the matter to the commission for reconsideration of the plaintiff's application.

[5] The court later consolidated that appeal with the original appeal.

commission filed the present appeal. Additional facts will be set forth as they become necessary in the context of the claims raised in the commission's appeal.

## I

The commission first claims that the court improperly denied its motions to dismiss the appeal on the grounds (1) that the issues raised therein were moot and (2) that the plaintiff had failed to exhaust its administrative remedies. We disagree.

A claim that an appellant in an administrative appeal seeks review of issues that are moot or that such appellant has failed to exhaust its administrative remedies implicates the court's subject matter jurisdiction and may be raised at any stage of the proceedings. See, e.g., *Johnson* v. *Dept. of Public Health*, 48 Conn. App. 102, 108, 710 A.2d 176 (1998); *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 505–506, 671 A.2d 844 (1996). Such a claim is a proper subject of a motion to dismiss. Practice Book § 10-30 et seq. A party may challenge a court's subject matter jurisdiction at any time, and "whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings." (Internal quotation marks omitted.) *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 557, 529 A.2d 666 (1987).

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 610–11, 793 A.2d 215 (2002). Furthermore,

whether subject matter jurisdiction exists is a question of law, and our review of the court's resolution of that question is plenary. Id., 611. We will address separately each of the commission's motions to dismiss.

A

Mootness

The commission, in its February 27, 2001 motion to dismiss, claimed that because it approved the plaintiff's application to construct and to operate an electric powered go-cart track, the controversy between the parties no longer existed, rendering the appeal moot. The commission posited that the plaintiff, having obtained approval of the subsequent application, had "waived whatever benefit it may have derived from the earlier application [and that] its development rights are controlled by the subsequent approval . . . ."

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is moot when the court can no longer grant any practical relief." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) Id.

We agree with the court that the appeal before it was not moot. The fact that the defendant granted the plaintiff's site plan application for a track for electric powered go-carts did not deprive the court of the ability

to fashion for the plaintiff practical relief in its appeal from the denial of its site plan application for a track for gasoline powered go-carts. Simply stated, we are persuaded by the fact that those proposed uses are not mutually exclusive. In opposing the motion to dismiss, the plaintiff submitted the affidavit of Michael Nelson, the plaintiff's president. Nelson averred that after receiving approval of the application to construct a track for electric powered go-carts, he began construction of the track. He further averred that after significant inquiry of suppliers, he believed that electric powered go-carts were neither technologically nor commercially feasible. Essentially, he represented that, having obtained permission to construct a track for electric powered go-carts, he still wanted to use the track for gasoline powered go-carts, which he described as readily available, safe, manufactured by reliable suppliers and relatively inexpensive. In short, he described the defendant's approval of the plaintiff's plan to operate electric powered go-carts as "an approval that we can't use."

In light of those averments and, on the basis of the nature of the controversy itself, we are unable to conclude that the commission's approval of the plaintiff's applications precluded the court from affording the plaintiff practical relief. Such relief, in the form of approval of the applications to construct a track for gasoline powered go-carts, would permit the plaintiff to use the track for the purpose for which it sought such approval in the first instance. Nothing about the commission's approval of the electric powered go-cart application rendered the relief sought in the administrative appeal either impractical or inconsequential.

The commission relies primarily on *Gagnon* v. *Planning Commission*, 222 Conn. 294, 608 A.2d 1181 (1992), in support of its claim that the appeal was moot. *Gagnon* is factually distinguishable. The appellant in *Gagnon*

appealed to the Superior Court from a planning commission's approval of an application to subdivide certain real property that abutted property owned by her. Id., 295–96. During the pendency of the administrative appeal, the planning commission granted a separate request filed by the original applicants to resubdivide the same real property. Id., 295. That second approval went unchallenged. Id.

Thereafter, the applicants in *Gagnon* sought to dismiss the pending appeal from the approval of the original subdivision application. Id., 296. They argued that the planning commission's approval of the resubdivision application had rendered the pending appeal moot. Id. The trial court agreed and, on further appeal, this court affirmed that decision. In affirming this court's decision in *Gagnon* v. *Planning Commission*, 24 Conn. App. 413, 588 A.2d 1385 (1991), our Supreme Court agreed with our conclusion that the "approval of the resubdivision application controls the applicants' rights to develop the parcel." (Internal quotation marks omitted.) *Gagnon* v. *Planning Commission*, supra, 222 Conn. 298. Our Supreme Court further noted that the applicants, by obtaining approval for the resubdivision and having recorded the resubdivision map in the land records, had "waived irrevocably whatever benefit they may have derived from the planning commission's earlier approval of the first subdivision. The defendants having withdrawn their claim to its benefits and having effectively extinguished the original subdivision plan through recording of the resubdivided version, the subdivision's potential burdens to the plaintiff no longer presented a justiciable issue." Id., 298–99.

In the present case, the fact that the plaintiff obtained approval to construct a track on which to operate electric powered go-carts did not in any way extinguish its opportunity to operate gasoline powered go-carts on that track. The plaintiff did not withdraw its original

application and did not file its subsequent application in lieu of its original application. Nothing about the fact that the commission approved the subsequent application irrevocably changed the plaintiff's ability to use the subject property to operate a track for gasoline powered go-carts. The subsequent granting of the application concerning electric powered carts did not control the applicant's rights so as to preclude it from using the track on the subject property to operate gasoline powered go-carts. The appellant in *Gagnon*, having failed to appeal from the granting of the resubdivision application, could derive no relief from the pending administrative appeal from the granting of the original subdivision application. The appellant in this case, however, stands on different footing. Should the commission grant the plaintiff's original application, the plaintiff will gain the opportunity to pursue its plan of operating a gasoline operated go-cart track. For those reasons, the plaintiff's appeal presented a justiciable issue to the Superior Court.

B

Exhaustion of Administrative Remedies

The commission, in its May 8, 2001 motion to dismiss, claimed that the plaintiff had failed to exhaust its administrative remedies, thereby depriving the court of subject matter jurisdiction over the appeal. The commission pointed out to the trial court, as it does to this court, that the plaintiff failed to appeal to the zoning board of appeals from the commission's July 6, 2000 denial of its application, which came before the commission on remand from the Superior Court. The commission posits that the plaintiff thereby failed to exhaust the administrative remedies available to it.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is

entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . Where a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 100, 809 A.2d 492 (2002). The requirement that an appellant first exhaust its administrative remedies "reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." (Internal quotation marks omitted.) *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995).

Our inquiry in the present case focuses on whether an administrative remedy was available to the plaintiff after the commission, on July 6, 2000, denied the application that was before it on remand from the court. We begin our analysis mindful that the particular regulations at issue dictate whether a further administrative remedy existed. *Castellon* v. *Board of Zoning Appeals*, 221 Conn. 374, 383, 603 A.2d 1168 (1992); *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 406–407, 755 A.2d 224, cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000).

Section XV of the Berlin zoning regulations, entitled "Zoning Board of Appeals," provides in relevant part: "A. Powers and Duties. The Zoning Board of Appeals (ZBA) shall have all the powers and duties prescribed by Chapter 124, Section 8 and by Chapter 250, Section

14 of the General Statutes, and by these Regulations, which powers and duties are summarized and more particularly specified below. None of the following provisions shall be deemed to limit any of the authority of the ZBA that is conferred by general law.

"1. Appeals. The ZBA shall have the authority to hear and decide upon any appeal where it is alleged that there is an error in the order, requirements, decision or determination of the ZEO.[6] No question of hardship shall be involved in such appeal, and the action of the ZBA thereon shall be limited to the question of whether or not, and to what extent such order, requirement, decision, or determination was a correct interpretation of the subject provision of these Regulations."

Subsection B of § XV of the regulations, entitled "General Rules," further provides in relevant part: "1. Appeals. All appeals to the ZBA from an order, requirement, decision or determination of the ZEO shall be taken within 90 days of such action by the ZEO. Such appeals shall be made in writing on a form prescribed by the ZBA and shall be accompanied by a filing fee to cover the cost of processing the appeal."

The commission argues, essentially, that the regulations provided a further administrative remedy from its denial in that the plaintiff had the opportunity to appeal from the decision to the zoning board of appeals. The commission posits that the regulations afforded such remedy because they refer to the powers conferred on the zoning board of appeals by General Statutes § 8-6.[7]

---

[6] The regulations, in § II, entitled "Rules and Definitions," provide in relevant part that "[t]he abbreviation 'ZEO' means the Zoning Enforcement Officer of the Town of Berlin." Berlin Zoning Regs., § II (A) (17).

[7] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

As the commission correctly points out, our courts have held that pursuant to powers conferred by our statutes, a zoning board of appeals *may* hear an appeal from a planning and zoning commission. *Conto* v. *Zoning Commission*, 186 Conn. 106, 114, 439 A.2d 441 (1982); *Borden* v. *Planning & Zoning Commission*, supra, 58 Conn. App. 409; *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 27 Conn. App. 412, 415–16, 606 A.2d 725 (1992), rev'd on other grounds, 225 Conn. 432, 623 A.2d 1007 (1993). In each of those cases, however, the regulations at issue provided for appellate review of the commission's action by the zoning board of appeals.

The present case is distinguishable from those cases because here, the zoning regulations do not provide for review of the commission's decisions by the zoning board of appeals. Although the regulations refer to the powers and duties conferred on the board by, inter alia, § 8 of our General Statutes, other provisions in the regulations more particularly specify the scope of the board's authority. On the basis of the excerpts of the regulations previously set forth, we conclude that the regulations unambiguously circumscribe the board's appellate authority to hearing and to deciding appeals from any "error in the order, requirements, decision or determination"; Berlin Zoning Regs., § XV (A); of Berlin's zoning enforcement officer. Having reviewed the regulations in toto, we do not find any provision that confers on the board the authority to review the commission's decisions.

For those reasons, we conclude that no further administrative remedy existed for the plaintiff to exhaust before pursuing its appeal before the trial court. See *Castellon* v. *Board of Zoning Appeals*, supra, 221 Conn. 382 (in absence of provision in regulations authorizing board to review commission's decision, no further remedy administrative remedy existed for plain-

tiffs to exhaust before resorting to an appeal pursuant to General Statutes § 8-9). The court properly concluded that it possessed subject matter jurisdiction over the appeal and, accordingly, properly denied the defendant's motion to dismiss the appeal.

## II

The commission next claims that the court improperly permitted the plaintiff to amend its complaint. We disagree.

The following additional procedural history underlies the commission's claim. On November 16, 1999, the plaintiff filed a motion to amend its complaint. The plaintiff thereby sought to add grounds to its appeal that, it alleged, it had discovered only after the commencement of the appeal. Essentially, the plaintiff wanted to add to its appeal its claims that the commission improperly had denied its applications on the basis of regulations that either were not effective or had not been adopted validly in the first place. The commission timely objected to the request to amend. The court thereafter issued a memorandum of decision in which it granted the plaintiff's motion.

We first set forth our standard of review. "A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [burden of the party challenging the court's ruling] to demonstrate that the trial court clearly abused its discretion." (Citation omitted; internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 696, 767 A.2d 1232 (2001).

On appeal, the commission argues, as it did before the trial court, that the court could not exercise jurisdiction to consider the plaintiff's challenge to the regulations that the commission relied on in denying the applications. The commission claims that the plaintiff could not challenge the validity of the regulations because it failed to comply with the notice requirement codified in Practice Book (1998) § 17-55 (4).[8]

As a preliminary matter, we note that the plaintiff in the present case did not bring a declaratory judgment action to challenge the regulations at issue in this appeal. Instead, it brought a nondeclaratory administrative appeal to adjudicate a specific claim of error concerning the commission's denial of its application. When it sought leave to amend its complaint, the plaintiff essentially sought for the court to consider a challenge to the regulations relied on by the commission as an avenue to obtain relief in its nondeclaratory administrative appeal.

In *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 715 A.2d 46 (1998), our Supreme Court addressed a similar issue. The trial court in that case had declined to consider a plaintiff's challenges to certain municipal grand lists, as well as to certain public acts, because the plaintiff had failed to afford notice of those challenges to interested parties in accordance with Practice Book § 390 (d), subsequently § 17-55 (4) (notice requirements of subdivision (4) were repealed January 1, 2000). Our Supreme Court held that because the plaintiff had raised those declaratory claims in the context of its administrative, or nondeclaratory, claim

---

[8] Practice Book (1998) § 17-55 provides in relevant part: "The judicial authority will not render declaratory judgments upon the complaint of any person . . .

"(4) until all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

for relief, it was improper for the trial court to decline to consider them. *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 576–79. The court observed that the plaintiff's challenges to the grand lists and the public acts were raised properly in the context of its nondeclaratory action. Id., 577–78.

Our Supreme Court expressly rejected the trial court's rationale in denying the motion, i.e., that "it lacked subject matter jurisdiction to consider the plaintiff's request for a declaratory judgment"; id., 576; because the plaintiff had failed to provide notice to interested parties of certain of its declaratory claims in accordance with Practice Book (1998) § 17-55 (4).[9] The court held that a party, without bringing a declaratory judgment action, could pursue a substantive administrative appeal in which it could challenge the validity of legislation in which many persons may have an interest. In so holding, the court, for several reasons, abandoned the rule it had set forth in *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 563, 552 A.2d 796 (1989), which required that "certain general challenges to the legality of legislation in which many persons may have an interest may be brought only through a declaratory judgment action, in order to ensure that notice be provided to all interested parties." *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 579.

In following *Stafford Higgins Industries, Inc.*, we conclude that the commission's claim, i.e., that the court

[9] The court further noted: "[E]ven if we were to assume, without deciding, that the plaintiff was required by Practice Book § 390 (d) [later Practice Book (1998) § 17-55 (4)] to give further notice of its additional [declaratory relief] claims, any lack of proper notice under that section with respect to the declaratory judgment count did not deprive the court of jurisdiction to consider those claims in the context of the plaintiff's nondeclaratory count." *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 578.

lacked jurisdiction to consider the plaintiff's challenge to certain municipal regulations, is without merit.[10] The plaintiff properly pursued its challenges to the regulations in its substantive appeal instead of in a separate declaratory action. For that reason, the court properly considered the plaintiff's claims in that regard, despite the fact that the plaintiff did not provide notice in accordance with Practice Book (1998) § 17-55 (4). Accordingly, the court's decision to grant the plaintiff's motion to amend was not improper and, on the basis of our review of the record, reflected an appropriate exercise of its discretion.

## III

Finally, the commission claims that the court improperly concluded that the commission lacked a legal basis on which to deny the plaintiff's site plan application. Specifically, the commission challenges the court's legal conclusions that (1) it improperly relied on § X (D) (3) of the regulations because such regulation was

---

[10] The commission apparently claims that the plaintiff's failure to so provide notice deprived the court of subject matter jurisdiction and, thus, the ability to pass judgment on the challenged regulations. We note that even if there were a declaratory judgment action, this characterization would be incorrect. Effective January 1, 2000, our rules of practice were amended to provide that challenges to the failure to provide notice in a declaratory judgment action must be made by way of a motion to strike as provided by Practice Book § 10-39 (a) ("[w]henever any party wishes to contest . . . (3) . . . pursuant to Section 17-56 (b), the failure to . . . give notice to any interested person . . . (5) . . . that party may do so by filing a motion to strike the contested pleading or part thereof"). As the official commentary to that section provides: "Under Section 17-56 as amended, the exclusive remedy for . . . failure to give notice to interested persons in declaratory judgment actions is by a motion to strike . . . . if the motion to strike is granted, the party seeking the declaratory judgment could either file a new pleading or move for judgment and then appeal." As subsequently stated in *37 Huntington Street, H, LLC* v. *Hartford*, 62 Conn. App. 586, 593, 772 A.2d 663, cert. denied, 256 Conn. 914, 772 A.2d 1127 (2001), that change makes "explicit what formerly had been implicit," that is, that the failure to comply with the notice requirement is not a jurisdictional defect.

ineffective and (2) it improperly applied § XIII (9) (b) and (k) of the regulations.[11] We disagree.

Before addressing each issue in turn, we note that the commission's claims challenge the court's underlying legal conclusion that, as a matter of law, it could not rely on those challenged regulations as a basis to deny the plaintiff's site plan application. We afford plenary review to such questions of law. See *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 699, 784 A.2d 354 (2001); *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 720–21, 780 A.2d 1 (2001).

A

Validity of § X (D) (3) of the Regulations

The commission relied in part on § X (D) (3) of the regulations as a basis for denying the site plan applications. That regulation, listed under § X, entitled "Environmental and Related Regulations," provides: "Noise—Any noise emitted outside the property from which it originates shall comply with the provisions of Sections 22a-69-1 to 22a-69-7.4 of the Regulations of the Connecticut Department of Environmental Protection ('Control of Noise')."[12] The court concluded that this regulation was ineffective because it conflicted with

[11] The commission relied on other regulations, in addition to those at issue in this appeal, in denying the plaintiff's site plan applications. Specifically, the commission cited to §§ VI (F); IX (B) (14) (c) (4); and IX (B) (14) (c) (4), (4) (a) and (5) of the regulations. For purposes of this opinion, it suffices to state that those regulations imposed certain landscaping or bulk requirements. The court concluded that the commission had failed to adopt those regulations and, consequently, concluded that the commission improperly had relied on them in denying the applications. The commission does not challenge that ruling on appeal.

[12] Subsection X (D), under which that provision is listed, provides in relevant part: "Environmental and Performance Standards—The use of land, buildings, and other structures shall be conducted in accordance with the following performance standards. All applicants for Site Plan approval under these Regulations shall demonstrate that the use they propose shall conform to the following standards . . . ."

state statutes governing noise pollution control. We agree.

Our legislature codified statutes governing noise pollution control in General Statutes § 22a-67 et seq. Section 22a-67 (a) provides in relevant part that "(1) [e]xcessive noise is a serious hazard to the health, welfare and quality of life of the citizens of the state of Connecticut" and that "(4) the primary responsibility for control of noise rests with the state and the political subdivisions thereof . . . ." The statutory scheme's expressed purpose is "to establish a means for effective coordination of research and activities in noise control . . . ." General Statutes § 22a-67 (b). The scheme empowers the commissioner of environmental protection to "develop, adopt, maintain and enforce a comprehensive state-wide program of noise regulation" as well as to work with local governments in their efforts to abate noise pollution. General Statutes §§ 22a-69 (a), 22a-70 (a) and (d).

To that end, the legislature expressly encouraged municipalities to "develop and establish a comprehensive program of noise regulation. Such program may include a study of the noise problems resulting from uses and activities within [their] jurisdiction and [their] development and adoption of a noise control ordinance." General Statutes § 22a-73 (a). The legislature further provided, in regard to municipal noise ordinances, that "[n]o ordinance shall be effective until such ordinance has been approved by the commissioner. No ordinance shall be approved unless it is in conformity with any state noise control plan . . . or any standards or regulations adopted by the administrator of the United States Environmental Protection Agency . . . . Notwithstanding the provisions of this subsection, any municipality may adopt more stringent noise standards than those adopted by the commissioner, provided such standards are approved by the commissioner." General

Statutes § 22a-73 (c). General Statutes § 22a-68 defines "commissioner" as "the Commissioner of Environmental Protection or his designated agent as defined in subsection (b) of section 22a-2."

Section X (D) (3) of the regulations, by its terms, purported to adopt the noise control regulations promulgated by the commissioner. As the defendant concedes, only the commission approved that regulation. The commission does not suggest that the commissioner approved the regulation.

Having reviewed the statutory scheme, we conclude that the legislature intended it to be a comprehensive plan for state and local efforts to abate noise pollution. The legislature clearly envisioned that municipalities could adopt regulations promulgated by the commissioner or that they could adopt regulations of their own. The legislature, however, required that local efforts comply with § 22a-73: Local efforts must be validly adopted and gain approval by the commissioner. On the basis of the statutes, the fact that the legislature addressed the means by which a municipality could adopt noise pollution control enactments and those statutory provisions regarding such local enactments in particular, we are left to conclude that the legislature has undertaken to preempt that field of legislation and to require that local efforts aimed at noise pollution control comply with the requirements it has enumerated by statute. See *Bencivenga* v. *Milford*, 183 Conn. 168, 176, 438 A.2d 1174 (1981) (whether legislature undertakes to occupy exclusively given field of legislation to be determined on analysis of statute and circumstances on which it intended to operate).

The legislature has provided, in unambiguous language, that "[n]o ordinance shall be effective until such ordinance has been approved by the commissioner. . . ." General Statutes § 22a-73 (c). The commission

concedes that it did not obtain such approval. It acknowledges § 22a-67 et seq., but posits that General Statutes § 8-2 empowered the commission to adopt § X (D) (3) of the regulations. Specifically, the commission argues that "[t]he type of regulation provided for in chapter 442 of the General Statutes [titled 'Noise Pollution Control'], by ordinance, is entirely different from the land use regulation adopted by the Berlin planning and zoning commission. Indeed, § X (D) (3) of the zoning regulations applies only to site plan review while an ordinance adopted pursuant to chapter 442 would regulate noise emissions in all situations and not merely when a site plan is under review."

We reject the commission's argument for several reasons. Most importantly, we read chapter 442, § 22a-67 et seq., as a comprehensive scheme for state and local efforts aimed at controlling noise pollution. Second, § 8-2, which grants local zoning commissions the authority to promulgate regulations, does not govern noise pollution laws. In fact, § 8-2, which sets forth in nearly exhaustive detail the types of regulations that local zoning commissions may promulgate, does not even mention noise or noise pollution. Although § 8-2 (a) does provide that regulations "shall be designed . . . to promote health and the general welfare," we do not read that language in the enabling statute to necessarily confer authority in the zoning commission to promulgate regulations concerning noise pollution and, moreover, we certainly do not read that language to contradict the legislature's specific enactment in § 22a-67 et seq. In construing statutes, we are mindful that "specific terms covering the given subject matter will prevail over other general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 23, 803 A.2d 879 (2002).

Finally, the fact that § 22a-73 refers to local *ordinances*, while the commission has labeled the enactment at issue in this case a zoning *regulation*, is of no consequence. On the basis of our review of § 22a-67 et seq., we conclude that it reflects the legislature's intent to preempt the field of noise pollution control. It is clear that the regulation at issue here imposes a type of noise pollution control that the statutory scheme was enacted to effectuate; the regulation specifically refers to the commissioner's regulations, promulgated under the authority conferred by the statutes. It would yield a strange result were we to hold that the commission could do that which the legislative body of the municipality could not do, that is, circumvent the provisions of § 22a-67 et seq.

For those reasons, we conclude that the court properly deemed § X (D) (3) of the regulations to be ineffective and properly concluded that the commission could not rely on the regulation in denying the site plan application.

B

Application of § XIII (9) (b) and (k) of the Regulations

The commission also relied, in part, on § XIII (9) (b) and (k) of the regulations in denying the site plan application. Those regulations are listed under § XIII, entitled "Site Plans." Subsection nine, entitled "Standards for Approval," provides in relevant part: "In reviewing and acting upon an application for Site Plan approval, the Commission shall take into consideration the health, safety and welfare of the public in general and the immediate neighborhood in particular, as well as the following factors . . . ." Factor (b) provides: "The arrangement of buildings, structures and uses on the site . . . ." Factor (k) provides: "The adequacy of the landscaping treatment, including any buffers and other screening."

The court, in its May 14, 1999 memorandum of decision, later modified by its July 7, 1999 articulation, ruled that, on remand, the commission could apply those regulations to the application "only insofar as the commission has other regulations dealing with the arrangement of buildings or the adequacy of landscaping and buffers," and not in regard to the other regulations that the court ruled could not be applied to the application.

After reconsidering the application on remand, the commission again denied it. The commission represents that it based its denial on § XIII (9) (b) and (k) of the regulations and concluded that the applications did not satisfy the zoning requirements "because of the health, safety and welfare concerns for the immediate neighborhood." Specifically, the commission represented to the court that "there was considerable concern by [it] that the noise generated by the gas go-karts would have a significant negative impact on the abutting residential property . . . ."

The court ruled that the commission's reliance on § XIII (9) (b) and (k) of the regulations was flawed. It noted that it had ordered the defendant to consider those regulations "only insofar as [it] has other regulations dealing with the arrangement of buildings or the adequacy of landscaping and buffers." As the court observed, the commission failed to do so. Instead, it grounded its decision on those regulations and its concerns about potential noise pollution that the property would generate.

A zoning commission's authority in ruling on a site plan is limited. A site plan is "filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 2.2, p. 18. General

Statutes § 8-3 (g) limits a zoning commission's authority to act on a site plan application: "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations." As this court has stated: "In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations." (Internal quotation marks omitted.) *Roraback* v. *Planning & Zoning Commission*, 32 Conn. App. 409, 412, 628 A.2d 1350, cert. denied, 227 Conn. 927, 632 A.2d 704 (1993); see also *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 468–69, 778 A.2d 61 (2001) (denial of site plan application cannot be based on subjective reasons bearing no relationship to zoning regulations).

In the present case, the commission, after considering the applications on remand, did not evaluate the applications in light of clearly defined standards set forth in the regulations. We agree with the court that § XIII (9) (b) and (k) of the regulations are not substantive in that they do not provide a specific basis on which to deny a site plan application. By its terms, § XIII (9) of the regulations is procedural in nature; it instructs the commission how it should consider applications for site plan approval. The provisions provide that the defendant should consider "[t]he arrangement of buildings, structures and uses on the site"; Berlin Zoning Regs., § XIII (9) (b); or "[t]he adequacy of landscaping treatment, including any buffers and other screening." Id., § (9) (k). Although it is logical that the commission will consider those provisions when determining if an application complies with clearly defined requirements set forth in the regulations, those provisions do not provide an independent basis upon which to base a

denial. Similarly, although § XIII (9) of the regulations also provides that the defendant may consider the "health, safety and welfare of the public," the defendant could not properly base its denial on that provision. As we previously stated, the commission was not empowered to exercise discretion in considering the application; its task was to determine if the application violated any clearly enunciated provisions set forth in the regulations. In the present case, the commission used the provisions discussed in an exercise of discretion that it did not possess.

Furthermore, to the extent that the commission denied the applications on the basis of its continued concerns about noise pollution, we conclude, as did the trial court, that this was improper. We already have concluded that the court properly invalidated the noise pollution control provisions of the regulations. That being the case, the commission lacked any basis in the regulations to deny the applications on the basis of noise. Denying the applications on the basis of its subjective concerns, as appears to be the case, is inconsistent with the commission's aforementioned ministerial role in reviewing a site plan application.

The judgment is affirmed.

In this opinion the other judges concurred.