## CORNELIA STREETER ET AL. *v.* BRUDERHOF COMMUNITIES IN NEW YORK, INC., ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01 CV02-0179481S

Memorandum filed November 3, 2003

*Pepe & Hazard,* for the plaintiffs.

*Kenny, O'Keefe & Usseglio,* for the named defendant.

*Paul A. Lange Law Offices,* for the defendant Executive Jet Management, Inc.

No appearance for the defendants Anwar E. Wissa, Jr., and Enid Wissa.

SHEEDY, J. This action concerns the claimed abduction of plaintiff Cornelia Streeter's two minor children, H and V,* by their father, defendant Anwar E. Wissa, Jr., the plaintiff's former husband. The claim is that Wissa, with the assistance of the other defendants, removed the children from the United States to Egypt

---

* Streeter has brought this action as a plaintiff on her own behalf and on behalf of H and V, her minor children. For purposes of clarity, she will be referred to as the plaintiff throughout this memorandum of decision.

via Ireland. The other defendants are: the named defendant, Bruderhof Communities in New York, Inc., the owner or carrier for the international flight; Rifton Management, LLC, a global aviation and manufacturing business; and Executive Jet Management, Inc., a private airline charter service. The plaintiff and the defendant father share joint legal custody; the plaintiff has physical custody.

The complaint asserts four causes of action: (1) interference with custodial relations; (2) negligence; (3) false imprisonment; and (4) intentional infliction of emotional distress.

Executive Jet Management, Inc. (Executive), has moved to dismiss the complaint,[1] stating that the court is without subject matter jurisdiction because the events in question occurred on an international flight and, thus, all of the plaintiff's state law claims are preempted by the Warsaw Convention. The plaintiff has objected to the same and invokes the "law of the case" doctrine. Specifically, Executive filed a notice to remove this case to federal court pursuant to 28 U.S.C. § 1441 (b) (2000), claiming preemption of the state law claims by the Convention for the Unification of Certain Rules Relating to International Transportation by Air (Warsaw Convention), Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105 (2000). The United States District Court for the District of Connecticut, sua sponte, issued an order to show cause why the case should not be remanded to state court for lack of federal subject matter jurisdiction, and the parties fully briefed the issue. The court held in its ruling and order that the claims fell outside the scope of the Warsaw Convention and remanded the case to state court. *Streeter* v. *Bruderhof Communities in New*

---

[1] Bruderhof Communities in New York, Inc., and Rifton Management, LLC, have filed the same motion and adopt the argument of Executive as their own.

*York, Inc.*, United States Court of Appeals, Docket No. 3:02 CV 1003 (2d Cir. December 5, 2002), (Underhill, J.).[2] The court explained its decision in this way: "Fairly read, the complaint in this case does not allege that any passenger suffered either personal injuries, nor even any injuries occurring on an aircraft or while embarking or disembarking. The fact that Streeter's children were passengers and also suffered injuries is not enough to bring this case within the scope of the Warsaw Convention; their alleged injuries did not occur as a result of an accident during an international flight pursuant to a contract of carriage, but as a result of the [defendants'] alleged negligent and intentional actions before, during and after an international flight for which no tickets were alleged to have issued and as to which neither the plaintiff nor her children contracted for travel."

The case was remanded to state court and transferred to this complex litigation docket. Executive here again raised its preemption argument.[3] All parties submitted lengthy briefs and oral argument was heard.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." *Upson* v. *State*, 190 Conn. 622, 624, 461 A.2d 991 (1983). It "admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." *Ferreira* v. *Pringle*, 255 Conn. 330, 346, 766 A.2d 400

---

[2] The court noted that *both* federal question and diversity jurisdiction were lacking.

[3] In fact, Executive asserts this claim for the third time, having first asserted it when the case was originally brought in the United States District Court for the District of Massachusetts.

(2000). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410–11, 722 A.2d 271 (1999). Whether subject matter jurisdiction exists is a question of law. *McIntosh* v. *Sullivan*, 77 Conn. App. 641, 644, 825 A.2d 207 (2003), citing *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 203–204, 821 A.2d 269 (2003).

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted; internal quotation marks omitted.) Id., 98–99. Executive's reply brief asserts only that this court may both reconsider the federal court ruling and, if it is felt that ruling was incorrect, this court may rule differently—which is only to restate the law. It is only in one paragraph of its reply brief that Executive offers the court a reason to depart from the prior ruling. Executive argues that, because it cannot appeal the United States District Court's remand under

28 U.S.C. § 1447 (d) (2000), this court's denial of a hearing on the motion or this court's application of the law of the case doctrine will leave it "without remedy for its Warsaw Convention preemption arguments" which "will deny [Executive] due process in having its arguments heard and also deny [Executive] any sense of fairness with respect to its preemption claims." This argument is inappropriate because it urges a decision based not on whether there is jurisdiction (the only ground appropriately considered in ruling on a motion to dismiss, the procedural vehicle chosen by the moving party) but also because Executive, contrary to the raw assertion of deprivation of due process for denial of an opportunity "to have its arguments heard," has, in fact, had the opportunity to brief fully its position in the federal court—which it did—and has fully briefed its position in this court *and*, on October 23, 2003, argued its position, this court having granted oral argument in accord with Executive's request for adjudication. Thus, its claim that this court's denial of hearing (not pertinent because a hearing was granted) or this court's resolution of the motion on the basis of the law of the case doctrine would be to "deny [Executive] any sense of fairness with respect to its preemption claims" is both offensive and unpersuasive given the history of the present case. Executive, in earlier choosing to remove the present case to the federal District Court, clearly knew remand was an alternative of which the federal judge was keenly aware when the court, sua sponte, issued an order to show cause why the case should not be remanded to state court for lack of federal jurisdiction. In choosing to respond to the court's invitation by way of legal brief as opposed to withdrawing its petition for removal, Executive occasioned the result it now decries.

In its order of remand, the court cited *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, 525 U.S. 155, 171–72,

119 S. Ct. 662, 142 L. Ed. 2d 576 (1999), (*Tseng*) and stated: "The Warsaw Convention [Convention] addresses and concerns, only and exclusively, the airline's liability for passenger injuries occurring on board the aircraft or in the course of any of the operations of embarking or disembarking. . . . [T]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope." (Internal quotation marks omitted.) It is relevant then to look at the text of the Convention itself. The Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention, Article 1 (1), 49 U.S.C. § 40105 note (2000). " 'International transportation' " includes "transportation in which, according to the contract made by the parties, the place of departure and the place of destination . . . are situated . . . within the territory of a single High Contracting Party . . . . "[4] Id., article 1 (2), 49 U.S.C. § 40105 note (2000). The Convention makes airlines liable for bodily injuries suffered as a result of an "accident . . . on board the aircraft or in the course of any of the operations of embarking or disembarking." Id., article 17, 49 U.S.C. § 40105 note (2000). Where article 17 of the Convention applies, it is the exclusive remedy available to plaintiffs. *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, supra, 161.

Executive maintains that this abduction of H and V[5] constitutes an "accident." That term has been defined by the United States Supreme Court as "an unexpected or unusual event or happening that is external to the passenger." *Air France* v. *Saks*, 470 U.S. 392, 405, 105 S. Ct. 1338, 84 L. Ed 2d. 289 (1985). For reasons here

[4] This flight began in Connecticut, stopped in Ireland and ended in Egypt. The United States, Ireland and Egypt are all High Contracting Parties to the Convention.

[5] The minor children are identified by their first initials, presumably to protect their privacy. The plaintiff is referred to by her maiden name, apparently restored to her as part of the judgment of dissolution.

to be stated, the court need not determine whether an international abduction constitutes an "accident."[6] It should be noted that the courts in the Second Circuit Court of Appeals have traditionally held that an "accident" under article 17 must arise from "risks that are characteristic of air travel" or from the abnormal or unexpected operation of the aircraft or conduct of airline personnel. See, e.g., *Wallace* v. *Korean Air Lines Co., Ltd.*, 214 F.3d 293, 298 (2d Cir. 2000), cert. denied, 531 U.S. 1144, 121 S. Ct. 1079, 148 L. Ed. 2d 955 (2001); *Fishman* v. *Delta Air Lines, Inc.*, 132 F.3d 138, 143 (2d Cir. 1998). The Supreme Court has repeatedly said that the definition of "accident" should be flexibly applied. *Air France* v. *Saks*, supra, 405. There are no allegations of bodily injury in the present case. The "damages" asserted as regards the plaintiff are loss of filial consortium, the costs of attempting to locate and recover her minor children, mental suffering, trauma, manifestations of emotional distress and anticipated expenses for psychological or psychiatric counseling likely necessary to permit a healthy reunion with the minor children. The damages asserted as regards the children are "significant trauma and personal injury" and "significant economic or other damages." The factual circumstances are not unlike those in *Tseng*; the plaintiff there had been subjected to what she felt was an intrusive search of her person at an international airport in the United States. Her damages were psychic or psychosomatic injuries; she alleged fear and emotional injuries and asserted causes of action for assault and false imprisonment. The lower court found that her claim was not compensable under article 17 because she sustained no bodily injury as a result of the search, and

[6] While the allegations of the complaint clearly suggest a well planned series of events culminating in the taking of the minor children to Egypt where they were kept for a prolonged period of time, it can be said that this kidnapping was "an unexpected or unusual event or happening that is external to the passenger" and, therefore, meets the definition in *Air France* v. *Saks*, supra, 470 U.S. 405.

the Convention did not permit recovery for the type of damages alleged.[7] *Tseng* v. *El Al Israel Airlines, Ltd.,* 919 F. Sup. 155, 158 (S.D.N.Y. 1996). The federal District Court further concluded that she could not pursue her claim under New York tort law because article 24 of the Convention shielded the airline from liability for personal injuries not compensable under article 17. Id. Article 24 provides that " 'cases covered by article 17' " may "only be brought subject to the conditions and limits set out in [the] convention.' " Id. The Second Circuit reversed. See *Tseng* v. *El Al Israel Airlines, Ltd.,* 122 F.3d 99 (2d Cir. 1997). It concluded first that no "accident" within article 17's compass had occurred but then went on to conclude that the Convention did not shield the routine operating procedures of the airline from assessment under the diverse laws of signatory nations governing assault and false imprisonment. See id., 104. The issue then before the Supreme Court was, therefore, the very issue before this court—specifically, when the Convention allows no recovery for the event in question (either because there was no "accident" or because no bodily injury was alleged—or both), is the passenger precluded from maintaining an action for damages under another source of law? (In *Tseng,* New York tort law; in the case presently before this court, Connecticut tort law.)

The Supreme Court began its analysis in *Tseng* by recognizing the tension among lower courts in determining what is meant when, in article 24, it is said that "cases covered by article 17" may only be brought subject to the conditions and limits set out in the Convention. Was Tseng's case one *not* "covered" by article 17 because, as the parties there agreed, there was no

---

[7] Using the flexible application prescribed by the Supreme Court in *Air France,* the federal District Court found the search to be an "accident": "[A] routine search, applied erroneously to plaintiff in the course of embarking on the aircraft, is fairly accurately characterized as an accident . . . ." *Tseng* v. *El Al Israel Airlines, Ltd.,* 919 F. Sup. 155, 158 (S.D.N.Y. 1996).

"accident" and no "bodily injury?" If so, Tseng could pursue state law remedies. With reference to the use of that phrase, the court stated: "That prescription is not a model of the clear drafter's art. We recognize that the words lend themselves to divergent interpretation." *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, supra, 525 U.S. 168. Writing for the court, Justice Ginsburg concluded that article 17 referred generically to all personal injury cases stemming from occurrences on board an aircraft or in embarking or disembarking and that the phrase was simply intended to distinguish that class of cases (article 17 cases) from cases involving damaged luggage or goods or delay (article 18 and article 19 cases). Id. Reading article 24 in that way, it precludes a passenger from asserting any international air transit personal injury claim under local law, including those claims that fail to satisfy the liability conditions of article 17 for whatever reason. Id.

The Supreme Court's primary impetus was to accomplish what it referred to as the "cardinal" purpose of the Warsaw Convention—to " 'achiev[e] uniformity of rules governing claims arising from international air transportation.' " Id., 169, quoting *Eastern Airlines, Inc.* v. *Floyd*, 499 U.S. 530, 552, 111 S. Ct. 1489, 113 L. Ed. 2d 569 (1991). Pointing to the array of liability rules set out in articles 17, 18, 19, 20, 22, 23 and 25, it concluded that the comprehensive scheme of those rules and the Convention's textual emphasis on uniformity were at odds with subjecting air carriers to the distinct, nonuniform liability rules of the individual signatory nations. *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, supra, 525 U.S. 169. It saw as a complementary purpose of the Convention the accommodation of the interests of passengers seeking recovery for personal injuries and the interests of air carriers seeking to limit liability. Id., 170. Having noted the preemptive effect on local law extended no further than the Convention's own

substantive scope, it declared that a carrier was undisputedly subject to liability under local law for injuries arising outside the Convention's scope—i.e., for passenger injuries occurring before any embarking or disembarking activities. Id., 172. Moreover, the court concluded, the drafting history of article 17 was consistent with its understanding of the preemptive effect of the Convention. Specifically, the court commented, the preliminary draft of the treaty made carriers liable " 'in the case of death, wounding, or any other bodily injury suffered by a traveler.' " Id., 172–73. "In the later draft [of] what is now Article 17, [carrier] liability was narrowed to encompass only bodily injury caused by an 'accident.' " Id., 173. Given this drafting change, the court reasoned, it was improbable the drafters intended in article 24 to permit passengers to "skirt those conditions by pursuing claims under local law." Id.

Finally, the court noted that Montreal Protocol No. 4[8] amended article 24 to read in relevant part: " 'In the carriage of passengers and baggage, any action for damages, *however founded*, can only be brought subject to the conditions and limits set out in this Convention . . .' " (Emphasis added.) Id., 174. The court concluded that, under the amended article 24, the Convention's preemptive effect was clear and that Montreal Protocol No. 4 clarified—rather than modified—the Convention's rule of exclusivity. *Tseng* held that the Convention precludes a passenger from maintaining an action for personal injury damages under local law when the claim does not satisfy the conditions for liability under the

---

[8] "Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague on September 8, 1955 (hereinafter Montreal Protocol No. 4), reprinted in S. Exec. Rep. No. 105-20, pp. 21–32 (1998)." *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, supra, 525 U.S. 160 n.2.

Convention. Id., 176. The judgment of the Second Circuit Court of Appeals was, therefore, reversed.[9]

*Tseng* thus dictates[10] and this court orders dismissal of the minor children's claims. As to the plaintiff's claim, the Convention is not applicable, and the carrier is subject to liability under this state's tort law for such injuries as were caused by the defendants' alleged conduct.

The court applies the law of the case doctrine insofar as it is found that the Convention does not apply to the claims of any party because no bodily injuries were sustained. The doctrine is, however, not applicable to the preemptive effect of the treaty, an issue not addressed by the federal District Court ruling.

The motion to dismiss is granted as to the minor children H and V; it is denied as to the plaintiff mother.

---

[9] Under article 25 (1), local law is not preempted in cases arising out of "willful misconduct," which conduct has neither been alleged here, nor was it briefed or argued. Warsaw Convention, supra, article 25 (1).

[10] Chief Justice Rehnquist and Justices O'Connor, Scalia, Kennedy, Souter, Thomas and Breyer joined with Justice Ginsberg; only Stevens, J., dissented on the ground that a treaty, like an act of Congress, should not be construed to preempt state law unless its intent to do so is clear by its express terms. *El Al Israel Airlines, Ltd.* v. *Tsui Yuan Tseng*, supra, 525 U.S. 180 (Stevens, J., dissenting).