******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FARMINGTON-GIRARD, LLC *v.* PLANNING
AND ZONING COMMISSION OF THE
CITY OF HARTFORD

THE PAMELA CORPORATION ET AL. *v.* PLANNING
AND ZONING COMMISSION OF THE
CITY OF HARTFORD
(AC 41601)

Lavine, Bright and Alexander, Js.

*Syllabus*

The plaintiff property owner, F Co., appealed to the trial court from the
decisions of the defendant Planning and Zoning Commission of the City
of Hartford adopting certain amendments to the city's zoning regulations
and changes to the zoning map. In 2012, F Co. submitted a special permit
application proposing the construction of a fast food restaurant with a
drive-through on its property. Shortly thereafter, the commission made
changes to the zoning map causing the classification of F Co.'s property
to change from a B-3 zone that allows drive-through operations to a B-
4 zone that does not. In response to F Co.'s application, H, the city's
chief staff planner, sent a letter to F Co., stating that the application
was incomplete because it lacked certain required information, and,
therefore, it was not sufficient to review. Thereafter, F Co. appealed
the commission's zoning map change to the trial court, which invalidated
the change because the commission had failed to comply with statutory
notice requirements. In September, 2014, the commission amended the
text of the zoning regulations, which resulted in the inability of F Co.
to use its property for a fast food restaurant with a drive-through. F
Co. appealed the amendment to the trial court on the ground that the
commission had failed to comply with procedural notice requirements.
In October, 2014, C sent a letter on F Co.'s behalf to D, the director of
the city's planning division. The letter purportedly supplied all of the
required information that was lacking on the special permit application.
In response, D sent C a letter stating that F Co.'s 2012 application was
void and that a new application with the required information had to
be submitted. D's letter coincided with the commission's adoption of a
zoning map change that prohibited F Co. from constructing a fast food
restaurant with a drive-through on its property. F Co. appealed the
zoning map change to the trial court on the ground that the commission
failed to comply with procedural notice requirements. Thereafter, F Co.
filed two additional appeals challenging the commission's subsequent
adoption of an amendment to the zoning regulations and a change to the
zoning map. The trial court consolidated F Co.'s appeals and, following
a hearing, rendered judgments dismissing the appeals for F Co.'s failure
to exhaust its administrative remedies. In reaching its decisions, the
court determined that the subject zoning map changes and text amend-
ments were void because the commission failed to comply with certain
procedural requirements, that F Co. had an application pending before
the commission on or about October, 2014, that, pursuant to the plain
language of the zoning regulations, D had the authority to declare the
application void, that D had articulated a clear and definite interpretation
of the zoning regulations in her letter to C, and that F Co. had a statutory
right to appeal D's decision to the city's Zoning Board of Appeals but
failed to do so. On appeal to this court, F Co. claimed that the trial
court improperly concluded that it was required to appeal D's decision
to the board and, thus, that it failed to exhaust its administrative reme-
dies. *Held*:

1. The trial court properly concluded that the city's zoning regulations pro-
vided D with the authority to declare F Co.'s 2012 special permit applica-
tion void; contrary to F Co.'s claim that the zoning regulations support
its contention that only the commission had the authority to declare
the application void, §§ 66 and 67 of the regulations give the director

of the city's planning division the overall responsibility for the administration of the regulations and designate the director as the zoning administrator, § 68 of the regulations explicitly provides that a special permit may not issue until the zoning administrator finds that the application and plans conform to all provisions of the regulations, and § 913 of the regulations, on which F Co. relied, requires compliance with § 68.

2. F Co.'s claim that there was no statutory or regulatory avenue for appeal of D's decision voiding its application was unavailing, there having been a right of appeal to the board under the applicable statute (§ 8-6 [a] [1]); D's letter voiding F Co.'s application was an appealable decision under § 8-6 because it had both a legal effect and contained a clear and definite interpretation of the zoning regulations, as D did not simply give advice to F Co. on a hypothetical situation, but, rather, she made a decision to void F Co.'s application, due to a clear and definitive interpretation of the regulations regarding an application's required information, and that decision had a legal effect on F Co. because F Co. was then required to file a new application that conformed to the regulations that were in place at that time.

3. F Co. could not prevail on its claim that an appeal to the board would have been futile; contrary to F Co.'s contention, D's determination in her letter that a new application must conform to the zoning map changes and text amendments in place at the time of the letter was based on her determination that the application was void, and, therefore, the board properly could have reviewed D's decision and provided an adequate remedy to F Co. by deciding that the application was not void and that no new application needed to be filed, and because the board could have found that the application was not void and was subject to the regulations in place at the time of its filing rather than to the zoning map changes and text amendments, an appeal to the board was an adequate administrative remedy that F Co. was obligated to seek.

Argued March 12—officially released June 25, 2019

*Procedural History*

Appeals from the decisions of the defendant adopting certain amendments to the zoning regulations and changes to the zoning map of the city of Hartford, brought to the Superior Court in the judicial district of Hartford and transferred to the Land Use Litigation Docket, where the appeals were consolidated; thereafter, the court, *Berger, J.*, granted the motions to withdraw filed by the plaintiff The Pamela Corporation; judgments dismissing the appeals, from which the plaintiff Farmington-Girard, LLC, on the granting of certification, appealed to this court. *Affirmed.*

*David F. Sherwood*, for the appellant (plaintiff Farmington-Girard, LLC).

*Daniel J. Krisch*, with whom was *Matthew J. Willis*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff Farmington-Girard, LLC,[1] appeals from the judgments of the trial court, rendered after a trial to the court, dismissing the plaintiff's four consolidated appeals that challenged text amendments to the Hartford Zoning Regulations (regulations) and zoning map changes made by the defendant, the Planning and Zoning Commission of the City of Hartford (commission), for failure to exhaust its administrative remedies. In this appeal, the plaintiff claims that (1) the trial court improperly concluded that it was required to appeal to the city's Zoning Board of Appeals (board) and, thus, failed to exhaust its administrative remedies, and (2) the defendant is estopped from applying the current regulations to the plaintiff's property.[2] We affirm the judgments of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The plaintiff owns property at 510 Farmington Avenue in Hartford. On December 10, 2012, the plaintiff submitted a special permit application, which the plaintiff describes as a "hastily submitted" placeholder application "in order to preserve its rights," proposing the construction of a small fast food restaurant with a drive-through. On December 11, 2012, the defendant made changes to the city zoning map causing the classification of the plaintiff's property to change from a B-3 zone that allows drive-through operations to a B-4 that does not. In response to the plaintiff's application, Kim Holden, the city's chief staff planner, sent a letter dated December 19, 2012, to the plaintiff, stating in relevant part: "A site plan with minimal information was attached to the application which is not sufficient to review with respect to the zoning regulations. . . . The application is considered incomplete and as such, the time clock on the application has been stopped."[3]

The plaintiff appealed the defendant's zoning map change to the Superior Court, *Peck, J.*, which invalidated the commission's December 11, 2012 zoning map change because the commission failed to comply with prehearing and posthearing statutory notice requirements.[4] *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Hartford, Docket No. CV-13-6038698-S (August 19, 2014).

On September 23, 2014, the defendant amended the text of the regulations, resulting in the plaintiff's inability to use its property for a fast food restaurant with a drive-through. The plaintiff appealed this amendment to the Superior Court in a complaint dated February 18, 2015, on the ground that the defendant failed to comply with procedural notice requirements.

In response to Holden's letter, stating that the plaintiff's December 10, 2012 application was incomplete,

Michelle Carlson wrote a letter dated October 20, 2014, on behalf of the plaintiff to Khara L. Dodds, the director of the city's planning division. According to the plaintiff, it had waited until after the court invalidated the 2012 zoning map change to complete its application. Carlson's letter purportedly supplied all of the required information outlined by Holden and requested that the time clock on the application run and that a public hearing for the application be set. In an affidavit, Carlson attested that she verbally was informed by the city that a new application was required and that the supplemental materials would not be accepted. Dodds responded to Carlson in a letter dated October 28, 2014, stating: "We are contacting you with regard to a site plan review application submitted December 10, 2012 and your desire to re-activate this application with your current plan submittal. After our initial review, it was clear that the original site plan application, #2012-6263 filed in December 2012, lacked the required materials to be considered valid. The application was submitted without site and architectural elevation plans: as a result the application is void. A new site plan application with the required materials must be submitted. Please note several changes to the City of Hartford Zoning Regulations have occurred since your last submittal. Please review these changes to ensure that all required materials are submitted with your new application."

Dodds' October 28, 2014 letter coincided with the defendant's adoption of another zoning map change that blocked the plaintiff's plan to build a drive-through fast food restaurant. The plaintiff appealed the October 28, 2014 zoning map change to the Superior Court in a complaint dated November 14, 2014, on the ground that the defendant failed to comply with procedural notice requirements. The plaintiff filed a variance application on October 28, 2014, as well.

The plaintiff additionally appealed to the Superior Court, in complaints dated December 15, 2014 and April 28, 2015, respectively, from the defendant's December 9, 2014 zoning map change and its April 14, 2015 text amendment to the regulations. The defendant amended its December 9, 2014 zoning map and its April 14, 2015 text in the same manner as it had on September 23, 2014 and October 28, 2014, respectively. In its appeals, the plaintiff again asserted that the defendant failed to comply with procedural notice requirements.

On January 20, 2015, the board denied the plaintiff's variance application. The plaintiff's appeals challenging the defendant's October 28 and December 9, 2014 zoning map changes were filed before the board denied the plaintiff's variance application.

After the plaintiff filed the four appeals that constitute the present matter, the defendant adopted new regulations on January 12, 2016, that place the plaintiff's property in a MS-1 zone. The plaintiff has not appealed from

the new zoning scheme or designation of its property.

On May 4, 2016, the defendant moved to dismiss the plaintiff's appeals as moot due to the passage of the new zoning scheme. The trial court, however, concluded that "if the plaintiff's particular application was complete on October 20, 2014, and the zone change was improper because of the failure to provide proper notice, then [the plaintiff] may have had a viable complete application that was in conformance with the applicable zoning regulations at that time." (Internal quotation marks omitted.)

After the parties filed briefs, including additional briefing on the exhaustion issue as requested by the court, and the court heard the appeals, the court made various findings. First, the court found that the defendant failed to comply with the procedural requirements for the September 23, October 28 and December 9, 2014, and April 14, 2015 zoning map changes and text amendments to the regulations. The court, therefore, concluded that the zoning map changes and text amendments were void. Second, the court concluded that the plaintiff had an application pending on or about October 20, 2014, as it found that "[w]hile the December 19, 2012 letter from the planning division informs [the plaintiff] that the application is incomplete, there is no evidence that [the] application was rejected or deemed void until 2014. The language of the December 19, 2012 letter was less than unequivocal." (Internal quotation marks omitted). Third, the court found that, contrary to the plaintiff's arguments, Dodds had the authority to declare the application void and that she had articulated "a clear and definite interpretation of the zoning regulations in her letter declaring the plaintiff's application void . . . ." (Citations omitted; internal quotation marks omitted.) Therefore, the court concluded that the plaintiff had a statutory right to appeal Dodds' decision to the board and had failed to do so. As a result, the court dismissed the plaintiff's appeals for a failure to exhaust its administrative remedies.

The plaintiff filed a motion to reargue on September 25, 2017, which the court granted. At the February 8, 2018 hearing, the court rejected the plaintiff's argument that an appeal to the board was not necessary because the futility exception applied, and denied the plaintiff relief from the dismissal of its claims. The plaintiff thereafter appealed to this court.

The plaintiff claims that the court improperly concluded that it was required to appeal Dodds' decision to the board and thus that it failed to exhaust its administrative remedies. Specifically, the plaintiff makes three arguments: (1) Dodds had no authority to deny the application, (2) there was no statutory authority requiring an appeal from an unsuccessful special permit application, and (3) an appeal would have been futile.[5] We disagree.

"As a preliminary matter, we set forth the applicable standard of review. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [Additionally] [b]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 807, 82 A.3d 602 (2014). "Moreover, [i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . Under that doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 477, 55 A.3d 251 (2012).

"A primary purpose of the doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities. . . .

"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . . [Our Supreme Court has] recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate. . . . Because of the policy behind the exhaustion doctrine, we construe these exceptions narrowly." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263

Conn. 558, 564–65, 821 A.2d 725 (2003).

Municipal zoning boards of appeal are empowered, under Connecticut law, "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." General Statutes § 8-6 (a) (1).

"As our Supreme Court has explained, the futility exception applies *only* when [the administrative remedy] could not result in a favorable decision . . . . Our Supreme Court further has instructed that an administrative remedy is adequate when it could provide the [party] with the relief that it seeks and provide a mechanism for judicial review of the administrative decision." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 628, 203 A.3d 645, cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019).

I

The plaintiff first argues that the commission alone had the authority to determine the completeness of the special permit application and that Dodds had no authority to reject the application herself. The trial court rejected the plaintiff's argument because it concluded that the plain language of the regulations gave Dodds the authority to reject the application. It stated: "Section 66 of the regulations provided that they 'shall be administered and enforced by the [D]epartment of [D]evelopment [S]ervices' and that the director of planning had 'overall responsibility for the administration of the regulations, and shall be the zoning administrator.' . . . Pursuant to § 67 [of the regulations], the director of the planning division had the authority to designate the zoning enforcement officer who was responsible for enforcement of the regulations and for the issuance of zoning permits. . . .

"Section 68 (a) [of the regulations], in relevant part, provided that '[p]rior to the issuance [of a zoning permit], the zoning administrator must find that the application and plans conform to all provisions of these regulations.' . . . Section 68 (c), in relevant part, required that each zoning permit application shall include 'an administrative review plan as well as such information and exhibits as are required in these regulations or may be reasonably required by the zoning administrator in order that the proposal of the applicant may be adequately interpreted and judged as to its conformity with the provisions set forth in these regulations.' . . . Section 68 (e) (1) required a special permit application to include a site plan . . . .

"Section 163 (h) [of the regulations] provided . . . 'All projects requiring a special permit as outlined in the table of permitted uses shall be referred to the

[c]ommission for review. . . .

"Section 875 [of the regulations] provided . . . 'Every application for the use of property subject to conditions set forth in this division shall be filed with the zoning administrator in accordance with the provisions of section 68 (relating to applications for zoning permits) and shall be subject to approval by the zoning administrator and any other commission, board or agency stipulated in this division.' . . .

"[Section] 913 [of the regulations] was entitled, 'Eating places with drive-in or curb service,' and, in relevant part, provided: '(a) The zoning administrator shall refer each application for an eating place with drive-in or curb service in the B-3 zoning district to the commission. The application shall be filed and acted on in accordance with the procedures set forth in section 68 (relating to applications for zoning permits). . . .

"(d) Every application for a special permit for a restaurant with drive-in or curb service shall be filed and acted on in accordance with the provisions of section 68 (relating to applications for zoning permits).' . . .

"In the present case, Dodds was responsible for the administration of the regulatory scheme." (Citations omitted; footnotes omitted.)

On appeal, the plaintiff does not claim that the court misstated or misconstrued the regulations,[6] but argues, rather, that §§ 163 and 913 of the regulations, which were acknowledged by the court in its analysis, and case law support its contention that only the commission may act on the application. We are unpersuaded, as none of the authorities on which the plaintiff relies states that *only* the commission had the authority to declare an application, which does not include the information as required by the regulation, void as incomplete after a public hearing.[7] Sections 66 and 67 of the regulations, however, give the director of the city's planning division the "overall responsibility for the administration of the regulations," and designate the director "the zoning administrator." Furthermore, § 68 of the regulations explicitly provides that a permit may not issue until the *zoning administrator* finds that the application and plans conform to all provisions of the regulations. Finally, § 913 of the regulations, on which the plaintiff relies, requires compliance with § 68. We, therefore, agree with the court that the regulations provide Dodds with the authority to declare the application, which did not conform to the applicable regulations, void.

## II

The plaintiff next argues that there was no statutory or regulatory avenue for appeal of Dodds' decision voiding its application. We disagree.

In its memorandum of decision, the court stated: "[Section] 8-6, in relevant part, provides: '(a) The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by *the official charged with the enforcement* of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . .' . . .

"The plaintiff argues that it could not have appealed Dodds' determination because she was not 'the official charged with the enforcement' under § 67 of the regulations. Nevertheless, our Supreme Court has 'not disagree[d], in principle, with the . . . contention that appeals under § 8-6 may be taken from decisions made by someone other than the designated zoning enforcement officer, if that other person in fact exercised, and was authorized to exercise, the relevant authority.' . . . Dodds had 'overall responsibility for the administration of the regulations' under § 66. . . . More importantly, she rendered 'a clear and definite interpretation of zoning regulations' in her letter declaring the plaintiff's application void . . . that ultimately affected the plaintiff's ability to use its property. . . . Thus, the plaintiff had a statutory right of appeal under § 8-6 (a) (1)."[8] (Citations omitted; emphasis in original; footnote omitted.)

We agree with the court that Dodds' letter voiding the plaintiff's application was an appealable decision because the letter had both a legal effect and contained a clear and definite interpretation of the regulations. "[W]hen there is a written communication from a zoning official relating to the construction or application of zoning laws, the question of whether a 'decision' has been rendered for purposes of appeal turns on whether the communication has a legal effect or consequence. . . . The obvious examples of such appealable decisions would be the granting or denying of building permits and the issuance of certificates of zoning compliance. . . . This interpretation is consistent with the terms used in relation to 'decision' under §§ 8-6 and 8-7—'order' and 'requirement'—which similarly import legal effect or consequence." (Citations omitted.) *Reardon* v. *Zoning Board of Appeals*, 311 Conn. 356, 365–66, 87 A.3d 1070 (2014). "[W]hen a landowner obtains a clear and definite interpretation of zoning regulations applicable to the landowner's current use of his or her property, the landowner properly may appeal that interpretation to the local zoning board of appeals." *Piquet* v. *Chester*, 306 Conn. 173, 186, 49 A.3d 977 (2012); contra *Holt* v. *Zoning Board of Appeals*, 114 Conn. App. 13, 29, 968 A.2d 946 (2009) (letter advising on hypothetical situation was not appealable decision). Dodds did not simply give advice to the plaintiff on a hypothetical situation, but, rather, she made a decision to void the

plaintiff's application, due to a clear and definitive interpretation of the regulations regarding an application's required materials, and that decision had a legal effect on the plaintiff because the plaintiff was then required to file a new application that conformed to the regulations in place at that time. We, therefore, reject the plaintiff's argument that it could not have appealed from Dodds' decision to void its application.

### III

The plaintiff's third argument is that an appeal to the board would have been futile because Dodds made two determinations in her letter: (1) that the application was void, and (2) that a reapplication must conform to the zoning map changes and text amendments in place at the time of the letter. The plaintiff argues that the "significance of the first determination in . . . Dodds' letter is wholly dependent on the validity of the second determination." Thus, the plaintiff contends that its claim can be reviewed only by a court of law as the validity of the zoning map and text amendments were under question and could not be resolved by the board. This argument is unpersuasive because, contrary to the plaintiff's argument, Dodds' second determination relies on her first determination—that the application was void and a new application needed to be submitted. The board properly could have reviewed Dodds' decision and provided a remedy to the plaintiff by deciding that the application was not void and that no new application needed to be filed.

If the board had determined that Dodds erred in deeming the application void, the plaintiff's application would not have had to conform to the new zoning map and text amendments pursuant to General Statutes § 8-2h (a), which provides, in relevant part, that "[a]n application filed with a . . . planning and zoning commission . . . which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application."[9] Because the board could have found that the application was not void and was subject to the regulations in place at the time of its filing rather than to the zoning map changes and text amendments, an appeal to the board was an adequate administrative remedy that the plaintiff was obligated to seek. "[A]n administrative remedy is adequate when it *could* provide the [party] with the relief that it seeks . . . ." (Emphasis added; internal quotation marks omitted.) *Wethersfield* v. *PR Arrow, LLC*, supra, 187 Conn. App. 628. We, therefore, reject the plaintiff's claim that it was not required to appeal to the board and that the court improperly dismissed its appeals for a failure to exhaust its administrative remedies.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The Pamela Corporation, the owner of 255 Farmington Avenue, was a coplaintiff in two of the four appeals made to the trial court in the present matter. The Pamela Corporation filed motions to withdraw, however, which the trial court granted, thus leaving Farmington-Girard, LLC, as the sole plaintiff. In this opinion, we refer to Farmington-Girard, LLC, as the plaintiff.

[2] Because we conclude that the court lacked subject matter jurisdiction, we do not reach the plaintiff's second claim.

[3] The letter also detailed specific items necessary for a special permit application that were not included in the plaintiff's submission.

[4] The Pamela Corporation also appealed the zoning map changes, and the two cases were consolidated.

[5] During the pendency of the plaintiff's appeal, this court became aware of an action that the plaintiff brought in the federal District Court against the defendant and the city of Hartford (municipal defendants) on the basis of the same essential circumstances as the present appeals. See *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, United States District Court, Docket No. 3:17-cv-1915 (MPS), 2019 WL 935500 (D. Conn. February 26, 2019). In the District Court, the plaintiff claimed, in part, that the municipal defendants violated its constitutional rights under 42 U.S.C. § 1983. Id., *1. After the plaintiff filed the present appeal, but before the oral arguments to this court, the District Court denied, in part, the municipal defendants' motion to dismiss the plaintiff's claims as unripe because the appeal before this court was not yet decided. Id. The District Court concluded that, because we, as an appellate court, are a remedial body, the plaintiff's claims were not unripe. Id., *8. Nonetheless, the court *sua sponte* ordered the parties to submit briefs on a different aspect of ripeness—whether the claims were unripe due to the plaintiff's failure to seek a variance before filing each of its federal appeals. Id. The District Court found that the plaintiff alleged sufficient facts to support the futility exception regarding the finality requirement of seeking a variance before appealing. Id., *8–9. We note, however, that the futility exception as it pertains to the exhaustion doctrine is fundamentally different from the futility exception as it applies to ripeness of a § 1983 claim because the focus of a § 1983 claim's ripeness is on whether there has been a final order that can be reviewed on appeal by the federal District Court, not on whether there was an administrative remedy available to the plaintiff.

"The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable. . . . While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." (Citations omitted.) *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 192–94, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). For finality purposes for a § 1983 claim, a plaintiff is "required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations. . . . [T]his jurisdictional prerequisite conditions federal review on a property owner submitting at least one meaningful application for a variance." (Citations omitted.) *Murphy* v. *New Milford Zoning Commission*, 402 F.3d 342, 348–49 (2d Cir. 2005). However, "[a] property owner . . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." Id., 349. Although a plaintiff would need to seek a variance or prove that it would have been futile to do so for finality purposes, "a plaintiff is not required to exhaust administrative remedies prior to filing a § 1983 claim . . . ." *Mangiafico* v. *Farmington*, 331 Conn. 404, 408, 204 A.3d 1138 (2019).

The District Court's conclusion, therefore, does not speak to whether the plaintiff has exhausted all administrative remedies as was required in the present matter, or whether it would have been futile to do so. The District Court's analysis focused only on whether there was a final order from the board, the highest decision-making body. The issue in the present appeal is whether a remedy was available to the plaintiff that it failed to seek.

[6] Our own independent review of the applicable regulations confirms that

the trial court correctly set forth the relevant language of the applicable regulations.

[7] Although the plaintiff cites cases that state that the commission has the discretion to proceed on an application, when, notably, the regulations did not require additional information; see *Woodburn* v. *Conservation Commission*, 37 Conn. App. 166, 179, 655 A.2d 764, cert. denied, 233 Conn. 906, 657 A.2d 645 (1995); or that the commission was not prohibited by the regulations from holding a hearing on an incomplete application; see *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 331, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992); the cases the plaintiff cites do not support the notion that a bare-bones application with minimal information could be deemed void or incomplete only by the commission. The plaintiff construes the receipt of an application as ministerial, even when the application is clearly incomplete; however, the cases it cites do not stand for that proposition. *Viking Construction Co.* v. *Planning Commission*, 181 Conn. 243, 247, 435 A.2d 29 (1980), deals only with when the time clock starts to tick for an application, and *Pluhowsky* v. *New Haven*, 151 Conn. 337, 347–48, 197 A.2d 645 (1964), supports the opposite notion—that ministerial duties can involve quasi-judicial determinations. See id. ("A ministerial duty on the part of an official often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial.").

[8] Furthermore, this court recently held that even the question of whether the zoning official had the authority to act must be raised before the zoning board of appeals for a plaintiff to exhaust its administrative remedies. See *Wethersfield* v. *PR Arrow, LLC*, supra, 187 Conn. App. 627.

[9] The plaintiff appears to argue that the board would have been unable to provide a remedy because the board could allow only the admittedly incomplete application to be considered. This argument fails to acknowledge that the plaintiff sought to complete the application through the submission of additional materials, and in response, Dodds considered the incomplete application void rather than allowing it to be completed by the submission of additional materials. We see no reason why the board would not have the power to conclude that the application, although incomplete, was not void.

The plaintiff additionally argues: "The plaintiff . . . [was] not seeking . . . the opportunity to have the defendant consider its permit application under the prior zoning regulations. That argument misses the forest for the trees. The plaintiff . . . [was] seeking permission to build and operate a McDonald's restaurant with a drive-through window at 510 Farmington Avenue. The December 10, 2012 application was simply a means to that end. If a new application need be submitted, so be it, but it should not be made subject to text amendments and a rezoning that were adopted illegally." We reject this argument.

Consideration of the application under the prior regulations would have given the plaintiff the chance to receive permission to construct and operate a restaurant with a drive-through on its property. It does not matter whether another manner of obtaining such a remedy was amenable or available to the plaintiff as long as an appeal to the board could have provided the plaintiff with relief and prevented the courts from being unnecessarily burdened. See *Stepney, LLC* v. *Fairfield*, supra, 263 Conn. 564–65 ("exhaustion of remedies . . . protects the courts from becoming unnecessarily burdened with administrative appeals" [internal quotation marks omitted]); *Wethersfield* v. *PR Arrow, LLC*, supra, 187 Conn. App. 628 ("an administrative remedy is adequate when it could provide the [party] with the relief that it seeks and provide a mechanism for judicial review of the administrative decision" [internal quotation marks omitted]).