# MILDRED B. BORDEN *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF NORTH STONINGTON ET AL.
## (AC 18864)

Schaller, Spear and Daly, Js.

Argued January 20—officially released June 27, 2000

*Elissa T. Wright*, with whom, on the brief, was *Joseph E. Moukawsher*, for the appellant (plaintiff).

*Richard S. Cody*, with whom, on the brief, was *Ana C. Navarro*, for the appellee (defendant Connecticut Hospital Management Corporation).

*Opinion*

SCHALLER, J. The plaintiff, Mildred B. Borden, appeals from the judgment of the Superior Court dismissing her appeal from the granting by the defendant planning and zoning commission of the town of North Stonington (commission) of the application for site plan approval filed by the defendant Connecticut Hospital Management Corporation, doing business as Stonington Institute (institute). On appeal, the plaintiff claims that the trial court improperly granted the institute's motion to dismiss her appeal on the ground that she had failed to exhaust her available administrative remedy of appealing to the North Stonington zoning board of appeals (board). We affirm the judgment of the trial court.

The following relevant facts and procedural history from the record are not in dispute. The institute operates an alcohol rehabilitation treatment facility in North

Stonington. The plaintiff is an abutting landowner. The facility is located in an area designated as an R-80 residential zone and its use therein is nonconforming.[1] Section 1102 of the North Stonington zoning regulations provides that "[n]on-conforming uses shall not be expanded to occupy additional building or outside space." Section 1103 of the regulations provides that a "building containing a non-conforming principal use shall not be enlarged to accommodate an expansion of such use."

On April 13, 1995, Richard Cody, attorney for the institute, appeared before the commission and expressed his concern that the state had changed the building, fire and safety codes for the institute's forty bed facility. Cody wanted to discuss the most appropriate way to adhere to the codes and regulations. The commission and Cody discussed the possibility of a zone or regulation change and concluded that the institute should meet with the planning task force, which was working on regulations in that area of the town at that time.

Cody met with the planning task force on August 2, 1995, and stated that the institute was contemplating the construction of a new building. The planning task force informed Cody that he should attend a workshop with the commission and present it with a proposal for a regulation change that would allow the institute to operate and expand within the residential zone.

Cody appeared before the commission on October 12, 1995, discussed the possibility of a regulation change, submitted regulations for the commission to review and

---

[1] Section 1101.1 of the North Stonington zoning regulations provides in relevant part: "Where a use . . . existed before the initial adoption or subsequent amendment of these Regulations, and where such use . . . conforms to the requirements of these regulations except for the requirement of a Special Permit . . . the use . . . may be continued without a Special Permit."

invited the commission for a site visit of the facility. The commission visited the facility on October 28, 1995. After the commission toured the facility, Michael Angelides, president of the institute, explained that changes in health insurance had increased the demand for detoxification services, and, by way of accommodation, the institute wanted to convert some of its rehabilitation beds to detoxification beds, which would necessitate changes to the buildings.

Cody appeared before the commission again on January 4, 1996. Cody and the commission discussed (1) a "footprint tradeoff," which, according to the minutes of the meeting, "involved the swap off of square footage which did not affect the forty bed facility's nonconforming use status" and (2) possible modifications to the regulations that would allow for the expansion of a nonconforming use. George Brown, the zoning enforcement officer, stated that the institute had been allowed to utilize the footprint tradeoff in the past with respect to a maintenance building because it did not involve the nonconforming, forty bed rehabilitation portion of the site. Arthur Pintauro, the chairman of the commission, stated that the commission would forward the matter to its attorney for comment.

Thomas B. Wilson, attorney for the commission, responded to the commission by way of letter dated February 23, 1996. Wilson wrote that if the commission wanted to accommodate the institute, it could either (1) change the regulations to transform the institute's use to permitted or (2) change the regulations to allow for the expansion of a nonconforming use. Wilson also suggested that in the event that the commission decided against changing the regulations, the institute also could apply to the board for a variance. He stated, "[i]n some cases, variances have been upheld to allow expansion of nonconforming uses where a hardship is shown and

[the] surrounding area is not adversely effected." The commission did not change the regulations.

On March 31, 1997, Cody filed with the commission an application for approval of an amended site plan, which proposed the removal of the facility's infirmary and the construction of a new one. Although it is not clear from the application, the record reveals that the one story infirmary would be replaced by a two story structure that would be built at another location on the premises. Part of the plan was to utilize the slab beneath the current infirmary as a patio. In a letter included with the application, Cody stated that the footprint of the old infirmary was 3591.40 square feet while that of the new infirmary would be 3607 square feet, or 3784 square feet if the roof overhang is taken into account.[2]

At an April 3, 1997 commission workshop, Brown reminded the members that the site plan was in violation of § 1102 of the regulations and stated that an expansion of even one square foot would be considered an expansion of a nonconforming use. The commission noted that it had previously concluded that the nonconforming use was the forty bed rehabilitation facility and, because the forty bed aspect would not be changing, the use would not be expanding. On April 8, 1996, Matthew Alexander, the town planner, submitted a letter to the commission in which he pointed out that the commission's attorney had, in a February 23, 1996 letter, given an opinion that an expansion of a nonconforming use to occupy additional building or outside space would be in violation of the regulations. Alexander recommended that the commission consider holding a public hearing due to the controversy over the nonconforming status.

The commission convened again on April 10, 1997, and took up the institute's application. It voted unanimously to review the application without a public hear-

---

[2] The record reveals that the total building space would be 7391 square feet.

ing and discussed the issue of swapping footprint dimensions of buildings. The commission concluded that that had been done in the past by the institute and other properties in town with the commission's approval. The commission stated, however, that to utilize that method and to be in compliance would require that the institute destroy an old pig sty on the property. In response to an inquiry by one of the members, Cody explained that the second floor of the infirmary would house office space and conference rooms but no additional beds. The commission then voted unanimously to approve the amended site plan with the stipulation that Alexander check it against a checklist and submit a report before the site plan would be signed. On April 18, 1997, the commission published notice of its approval of the institute's site plan in the Westerly Sun, a local newspaper.

By way of an amended complaint, the plaintiff appealed directly to the Superior Court claiming, inter alia, that the expansion of the institute's nonconforming use is in violation of the regulations and that the commission's action was therefore improper. On January 21, 1998, the institute moved to dismiss the plaintiff's amended complaint, arguing that because the action of the commission was "enforcement" of the regulations and the regulations provided for an appeal to the board from such an action, the plaintiff had failed to exhaust her administrative remedy of appealing to the board. The institute argued that the court therefore lacked subject matter jurisdiction. The trial court agreed with the institute and dismissed the plaintiff's appeal. We granted the plaintiff's petition for certification to appeal to this court.

In support of her assertion that the court improperly granted the institute's motion to dismiss her appeal, the plaintiff claims that (1) the trial court improperly concluded that, in approving the institute's site plan,

the commission was engaged in the "enforcement" of the regulations, (2) an appeal to the board would effectively deprive her of her right to due process of law, (3) an appeal to the board would be inadequate and futile and (4) regardless of whether the commission's action was enforcement, she, as an abutting landowner, alleging that she will be damaged as a result of such action, is not required to exhaust the remedy of an administrative appeal. We address these claims in turn.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." *Upson* v. *State*, 190 Conn. 622, 624, 461 A.2d 991 (1983). "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . ." Practice Book § 10-31 (a). " '[W]here legal conclusions of the [trial] court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . .' *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). Thus, our review of the trial court's ultimate legal conclusion and resulting grant of the motion to dismiss will be de novo." *Pitchell* v. *Hartford*, 247 Conn. 422, 428–29, 722 A.2d 797 (1999). "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); *State ex rel. Golembeske* v. *White*, 168 Conn. 278, 282, 362 A.2d 1354 (1975); see 3 [K.] Davis, Administrative Law [3d Ed. 1972] § 20.01; Gen-

eral Statutes §§ 4-175, 4-183." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 588, 424 A.2d 285 (1979).

I

The plaintiff claims first that the trial court improperly concluded that the commission was engaged in the act of the "enforcement" of the regulations when it granted the institute's site plan application. We are not persuaded.

In *Castellon* v. *Board of Zoning Appeals*, 221 Conn. 374, 383, 603 A.2d 1168 (1992), our Supreme Court noted that whether an administrative remedy is available is ascertained by examining the applicable regulations. Section 207 of the North Stonington regulations, entitled "Appeals and Variances," provides in relevant part: "As provided in Section 8-6 of the Connecticut General Statutes, any person who claims that there is an error in any order, requirement, or decision made by the Commission or its agent in the enforcement of these Regulations may appeal such action to the Zoning Board of Appeals. . . ."[3] Whether the plaintiff was required to appeal to the board depends, therefore, on whether the commission's granting of the institute's site plan application was "enforcement" of the regulations.

The case of *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 27 Conn. App. 412, 606 A.2d 725 (1992), rev'd on other grounds, 225 Conn. 432, 623 A.2d 1007 (1993), is instructive on the issue. In *Leo Fedus & Sons Construction Co.*, the commission had interpreted the town's regulations to allow an asphalt plant as a permitted use. Id., 413. The commission sub-

---

[3] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of . . . any . . . regulation . . . ."

sequently denied the plaintiff's application for site plan approval for an asphalt plant. Id. The plaintiff appealed to the zoning board of appeals. Id. Thereafter, the commission reinterpreted the regulations, concluding that asphalt plants were no longer allowed under the regulations. Id., 414. The board then dismissed the appeal because the commission's reinterpretation had deprived it of jurisdiction. Id. The plaintiff sought a writ of mandamus to compel the board to sustain the appeal and to issue a certificate approving its application. Id. The trial court granted the relief requested. Id., 415.

On appeal, we addressed the issue of whether the board had jurisdiction to hear the plaintiff's appeal from the commission's denial of site plan approval. In holding that it did, we noted first there, as we have here, that the answer to the question lies in the "particular regulations at issue." Id., 416, quoting *Castellon* v. *Zoning Board of Appeals*, supra, 221 Conn. 383. The regulations in *Leo Fedus & Sons Construction Co.* provided that "[a]ny person may appeal to the Zoning Board of Appeals when it is alleged that there is an error in any order, requirement, or decision made by the Commission or Zoning Enforcement Officer related to the enforcement of these regulations." (Internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 27 Conn. App. 416. Upon noting that "regulations . . . may be enforced by a refusal of a building or occupancy permit where the construction or use of the land in question is not in compliance with the pertinent regulations"; (internal quotation marks omitted) id., 417; we concluded that the commission's denial of the site plan application similarly was an enforcement of the regulations.

The institute argues that *Leo Fedus & Sons Construction Co.* is directly on point, while the plaintiff claims that it should not be extended to the facts of her case. The plaintiff argues that, because the regulations pro-

vide that nonconforming uses shall not be expanded and that the commission was aware of the prohibition, its decision to grant the institute's application to expand its nonconforming use constituted a legislative act and was, therefore, not an enforcement action.

Although the language of the regulation in *Leo Fedus & Sons Construction Co.* is slightly different from the language in this case, both regulations clearly state that if the commission's action constitutes enforcement of the regulations, an appeal from that action must be taken to the board. Contrary to the institute's claim, however, that *Leo Fedus & Sons Construction Co.* is directly on point, it differs from this case in that the action there was a *denial* of a site plan application, while the action in this case is a *granting* of a site plan application. We turn then to an analysis of whether *Leo Fedus & Sons Construction Co.* applies in this situation.

"Where the agency, which is generally the zoning commission, acts upon a site plan application, it acts in an administrative capacity." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.5, p. 166. Pursuant to General Statutes § 8-3 (g), "regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations," and a site plan application may be "denied only if it fails to comply with requirements already set forth in the zoning . . . regulations." When an agency undertakes consideration of a site plan application, it has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated into the site plan regulations by reference. *Allied Plywood, Inc.* v. *Planning & Zoning Commission*, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). Section

803 of the regulations, entitled "Purpose of Site Plan" provides in part that "[t]he Site Plan is intended to provide the Commission with information that will enable it to determine that (a) the proposed activity is consistent with both the specific requirements as well as the spirit of these Regulations . . . ."

It is clear to us that when a commission acts to grant a site plan application, its purpose is the same as when it acts to deny one: to determine whether the proposal complies with the regulations. Our holding in *Leo Fedus & Sons Construction Co.* that the commission's denial of a site plan application, under a similar regulation, constitutes "enforcement," is equally applicable in this case, where the commission granted the institute's site plan application. Accordingly, we hold that the commission in this case was engaged in the "enforcement" of the regulations and, therefore, that the plaintiff had available to her the administrative remedy of appealing to the board.

## II

The plaintiff claims next that requiring her to appeal to the board would violate her right to due process of law. The crux of the plaintiff's claim is that she was not given adequate notice that she must appeal to the board before appealing to the Superior Court. The plaintiff claims that the notice of the commission's decision, required under § 8-3 (g),[4] recited a fifteen day appeal period which, under General Statutes § 8-8 (b), is the appeal period for appeals taken to the Superior Court. The plaintiff argues that because an appeal taken to the board would have an appeals period of thirty days; General Statutes § 8-7; she was justified in assuming that the commission's recital of a fifteen day appeal

---

[4] General Statutes § 8-3 (g) provides in relevant part: "The commission shall publish notice of the approval or denial of site plans in a newspaper having a general circulation in the municipality. . . ."

period meant that an appeal to the Superior Court was the proper avenue. She argues that to hold otherwise would be unfair and in violation of her right to due process of law.

Our review of the record reveals that this claim was not raised in the trial court. An appellate court is not bound to consider an issue "unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. This limitation on appellate review applies to all claims, constitutional or otherwise, that were neither ruled on nor decided by the trial court adversely to the moving party. See *Ames* v. *Sears, Roebuck & Co.*, 8 Conn. App. 642, 649, 514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986).[5] We, therefore, decline to review this issue.

### III

The plaintiff claims next that an appeal to the board would be inadequate or futile and that she is, therefore, excepted from the doctrine of exhaustion of administrative remedies. We are not persuaded.

Our Supreme Court has recognized certain limited exceptions to the exhaustion doctrine, including where the available relief is inadequate or futile. *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 426, 655 A.2d 1121 (1995). In support of her claim that an appeal to the board would be inadequate or futile, the plaintiff argues first that interpretation of zoning regulations is a question of law that only the Superior Court is competent to determine. While it is true that courts frequently are called on to construe agency regulations, and an agency is not afforded spe-

---

[5] The plaintiff has not requested review under the plain error exception to our well established rule limiting review to claims distinctly raised in the trial court, and nothing in the record before us presents circumstances to warrant such review. See Practice Book § 60-5; see also *Chaplin* v. *Balkus*, 189 Conn. 445, 447, 456 A.2d 286 (1983).

cial deference when its determination of a question of law has not previously been the subject of judicial scrutiny; *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995); local boards are entrusted with the function of interpreting and applying their own zoning regulations. See *New London* v. *Zoning Board of Appeals*, 29 Conn. App. 402, 405, 615 A.2d 1054, cert. granted, 224 Conn. 921, 618 A.2d 528 (1992) (appeal withdrawn March 18, 1993).

The plaintiff argues also that there is no remedy that the board could fashion and that her appeal to the board would therefore be futile. We disagree. Nothing in the applicable statutes, relevant case law, or the regulations bars the board from determining that the commission's interpretation, which would allow the building to be expanded as long as there were no beds added, was incorrect. Again, the board may review decisions of those enforcing the regulations, which necessarily includes interpretation of the regulations when challenged. General Statutes § 8-6; *Conto* v. *Zoning Commission*, 186 Conn. 106, 114, 439 A.2d 441 (1982).

## IV

The plaintiff claims finally that her status as an abutting landowner affords her direct access to the Superior Court. Specifically, she argues that because case law recognizes that abutting landowners may bring an injunction action directly to the Superior Court to correct zoning violations without exhausting their administrative remedies, she should similarly be allowed to bring this appeal. See, e.g., *Cummings* v. *Tripp*, 204 Conn. 67, 75–78, 527 A.2d 230 (1987); *Reynolds* v. *Soffer*, 183 Conn. 67, 69–70, 438 A.2d 1163 (1981).

Our review of the applicable cases reveals that, for this exception to the exhaustion doctrine to apply, the plaintiff's action must be equitable in nature. The plaintiff's amended complaint does not seek to enjoin the

institute from implementing the improvements to the facility described in its site plan application but, rather, is an appeal from the commission's decision to approve the application. The plaintiff, therefore, cannot avail herself of this exception.

The judgment is affirmed.

In this opinion the other judges concurred.

