FARMINGTON-GIRARD, LLC *v.* PLANNING AND
ZONING COMMISSION OF THE
CITY OF HARTFORD

THE PAMELA CORPORATION ET AL. *v.* PLANNING
AND ZONING COMMISSION OF THE
CITY OF HARTFORD
(SC 20374)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff property owner, F Co., appealed to the trial court from the
decisions of the defendant, the Planning and Zoning Commission of
the City of Hartford, adopting certain amendments to the city's zoning
regulations and changes to the zoning map. In 2012, shortly after F Co.
submitted a special permit application to the commission to construct
a fast-food restaurant with a drive-through window on its property,
the commission approved a zone change that placed the property in a
different zoning district and effectively prohibited F Co.'s proposed use.
F Co. was then notified that its application was incomplete and that it
needed to submit additional information if it wished to proceed. F Co.
appealed to the trial court from the commission's adoption of the zone
change, and the court sustained F Co.'s appeal. Subsequently, in 2014,
F Co.'s lessee, M Co., began to prepare the materials required to complete
the special permit application and attempted to schedule a meeting to

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

review the application with D, the city's zoning administrator. Two days before the meeting, however, certain amendments to the zoning regulations that had been adopted by the commission in 2014, which prohibited fast-food restaurants with drive-through window service adjacent to residential zones, went into effect. At the meeting, representatives of M Co. delivered the materials needs to complete F Co.'s initial application for a special permit, but D informed them that the proposed use of the property was then prohibited by virtue of the 2014 amendments. D then sent a letter to M Co. stating that F Co.'s application was void on the ground that it was incomplete. On the same day, the commission readopted the 2012 zone change to F Co.'s property. F Co. filed separate appeals from the commission's adoption of the amendments and the readoption of the zone change. Thereafter, the commission readopted the zone change and the amendments to the zoning regulations, and F Co. filed separate appeals from those two actions. The trial court consolidated the four appeals and, following a hearing, rendered judgments dismissing the appeals. The trial court concluded that, although the amendments and zone changes at issue were void due to defective notice, F Co. had failed to exhaust its administrative remedies insofar as it failed to appeal to the city's Zoning Board of Appeals from D's decision voiding its application for a special permit. F Co. appealed to the Appellate Court, which affirmed the judgments of the trial court, and F Co., on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court incorrectly determined that D had the authority to determine that F Co.'s application for a special permit was void under the city's zoning regulations; the relevant provisions (§§ 913 (a) and 163 (h)) of the zoning regulations required the zoning administrator to refer each special permit application for a fast-food restaurant with a drive-through window, and all projects requiring a special permit as outlined in a table of permitted uses, respectively, to the commission for review, that procedure was consistent with the provision in the enabling statute (§ 8-3c (b)) authorizing only zoning commissions and certain other bodies to act on applications for special permits, and the provision (§ 68 (a)) of the zoning regulations requiring the zoning administrator to find that applications for zoning permits conform to all provisions of the regulations applies only to applications for general zoning permits and not to applications for special permits.

2. The Appellate Court incorrectly determined that F Co. was required to appeal to the city's Zoning Board of Appeals from D's decision purporting to void F Co.'s application for a special permit, and, accordingly, the Appellate Court improperly upheld the trial court's dismissal of F Co.'s consolidated appeals on the basis of F Co.'s failure to exhaust its administrative remedies: because only the commission, and not D, had the authority to act on the application for a special permit, D's letter purporting to void F Co.'s application was a null and void ultra vires act

Farmington-Girard, LLC *v.* Planning & Zoning Commission

rather than a legal decision from which F Co. could have appealed; accordingly, F Co.'s failure to pursue an administrative appeal from D's decision did not render moot F Co.'s consolidated appeals; moreover, because the commission did not cross appeal from the trial court's determination that the commission's adoption of the amendments and zone changes were void as a result of defective notice, that determination was upheld.

Argued May 1, 2020—officially released June 7, 2021**

*Procedural History*

Appeals from the decisions of the defendant adopting certain amendments to the zoning regulations and changes to the zoning map of the city of Hartford, brought to the Superior Court in the judicial district of Hartford and transferred to the Land Use Litigation Docket, where the appeals were consolidated; thereafter, the court, *Berger, J.*, granted the motions to withdraw filed by the plaintiff The Pamela Corporation; subsequently, the cases were tried to the court; judgments dismissing the appeals, from which the plaintiff Farmington-Girard, LLC, on the granting of certification, appealed to the Appellate Court, *Lavine*, *Bright* and *Alexander, Js.*, which affirmed the judgments of the trial court, and the plaintiff Farmington-Girard, LLC, on the granting of certification, appealed to this court. *Reversed*; *judgments directed.*

*David F. Sherwood*, for the appellant (plaintiff Farmington-Girard, LLC).

*Daniel J. Krisch*, with whom, on the brief, was *Matthew J. Willis*, for the appellee (defendant).

*Opinion*

McDONALD, J. The primary issues that are before us in this appeal are (1) whether a zoning administrator has the authority to take conclusive action on an application for a special permit, and (2) whether an applicant

** June 7, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

whose special permit application is rejected as void
by a zoning administrator on the ground that it was
incomplete must exhaust its administrative remedies
by appealing that action to a zoning board of appeals.

After the plaintiff Farmington-Girard, LLC,[1] applied
for a special permit to construct a fast-food restaurant
on property that it owns in the city of Hartford (city),
it filed four separate appeals challenging various text
amendments to the Hartford Zoning Regulations and
zoning map changes made by the defendant, the city's
Planning and Zoning Commission (commission), which,
if properly adopted, would effectively preclude the
plaintiff from obtaining the special permit. The trial
court subsequently dismissed the appeals on the ground
that the plaintiff had failed to exhaust its administrative
remedies when it did not appeal to the city's Zoning
Board of Appeals (board) the decision of the city's
zoning administrator to reject, as void, the plaintiff's
special permit application on the ground that it was
incomplete. The plaintiff appealed to the Appellate
Court, which affirmed the judgments of the trial court.
*Farmington-Girard, LLC* v. *Planning & Zoning Com-
mission*, 190 Conn. App. 743, 760, 212 A.3d 776 (2019).
We conclude that the Appellate Court incorrectly deter-
mined that the city's zoning administrator had the
authority to void the plaintiff's application for a special
permit. We further conclude that the plaintiff could not
have appealed to the board from the action of the zoning
administrator because it was not a legal decision for
purposes of General Statutes § 8-6, which governs such

[1] "The Pamela Corporation, the owner of 255 Farmington Avenue [in
Hartford], was a coplaintiff in two of the four appeals [brought] to the
trial court in the present matter. The Pamela Corporation filed motions to
withdraw, however, which the trial court granted, thus leaving Farmington-
Girard, LLC, as the sole plaintiff." *Farmington-Girard, LLC* v. *Planning &
Zoning Commission*, 190 Conn. App. 743, 745 n.1, 212 A.3d 776 (2019).
Therefore, for convenience, we refer to Farmington-Girard, LLC, as the
plaintiff in this opinion.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

appeals. Accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following facts, which were either found by the trial court or are undisputed, and procedural history. The plaintiff owns property located at 510 Farmington Avenue in Hartford, which it has marketed as a location for a fast-food restaurant with a drive-through window. In late 2012, the plaintiff became aware that the commission was proposing to rezone the property from the B-3 zoning district, linear business, to the B-4 zoning district, neighborhood business, a change that would effectively prohibit the use of the property as a fast-food restaurant with a drive-through. On December 10, 2012, the plaintiff submitted a special permit application to the commission to construct a fast-food restaurant on the property.

The next day, December 11, 2012, the commission approved the zone change that placed the property in a B-4 zoning district. On December 19, 2012, Kim Holden, the city's chief staff planner, wrote a letter to the plaintiff advising it that the special permit application filed by the plaintiff was "considered incomplete and, as such, the time clock on the application has been stopped." Holden told the plaintiff that, if it wished to proceed with the application, it should submit certain additional required information.

Meanwhile, the plaintiff appealed to the Superior Court from the commission's December 11, 2012 adoption of the zone change. While that appeal was pending, the plaintiff negotiated a ground lease with McDonald's USA, LLC, which lapsed before the appeal was resolved. When the court sustained the plaintiff's appeal on August 19, 2014,[2] McDonald's reinstated the lease,

[2] The trial court explained that, "in light of the defects in the commission's notice of the proposed zoning boundary change prehearing and the zoning boundary change of December 11, 2012 posthearing, the appeals of the [plaintiff] are hereby sustained, and the zoning boundary change from B-3 to B-4 is hereby deemed invalid."

Farmington-Girard, LLC *v.* Planning & Zoning Commission

began to prepare the materials required to complete the special permit application and attempted to schedule a meeting to review the application with Khara Dodds, the director of the city's planning division and its zoning administrator.

On September 23, 2014, the commission adopted certain text amendments to the zoning regulations that, among other things, prohibited fast-food restaurants with drive-through window service adjacent to residential zones. The text amendments, which were to become effective on October 18, 2014, would have prohibited the proposed restaurant on the plaintiff's property.

After Dodds postponed the meeting several times, a meeting between Dodds and the representatives of McDonald's, Daniel E. Kleinman, an attorney, and Michelle Carlson, a professional engineer, finally took place on October 20, 2014. At that meeting, Kleinman and Carlson delivered a set of materials that, according to their understanding, completed the application for a special permit that the plaintiff had first submitted on December 10, 2012. Dodds informed them that, as the result of the text amendments that took effect two days previously, the proposed use of the property had become prohibited.

On October 28, 2014, Dodds wrote a letter to Kleinman, stating that, "[a]fter our initial review, it was clear [that] the original site plan application . . . filed in December, 2012, lacked the required materials to be considered valid. The application was submitted without site and architectural elevation plans; as a result, the application is void. A new site plan application with the required materials must be submitted. Please note [that] several changes to the [city's] [z]oning [r]egulations have occurred since your last submittal. Please review these changes to ensure [that] all required mate-

Farmington-Girard, LLC *v.* Planning & Zoning Commission

rials are submitted with your new application.''[3] That same day, the commission readopted the change rezoning the plaintiff's property from the B-3 to the B-4 district.[4]

The plaintiff separately appealed from the commission's adoption of both the September 23, 2014 text amendments and the October 28, 2014 zone change. Thereafter, on December 9, 2014, the commission readopted the zone change, and, on April 14, 2015, the commission readopted the September 23, 2014 text amendments. The plaintiff also filed separate appeals from those two actions. The four administrative appeals, which are the subject of the appeal before us now, were consolidated for trial. More zoning changes were yet to come. In 2016, the city adopted "form based" zoning regulations that superseded all prior amendments. As a result, the plaintiff's property was placed in the MS-1 zone, in which restaurants with drive-through windows are prohibited.

Thereafter, the commission filed a motion to dismiss the consolidated appeals on the ground that they had become moot in light of the new form based zoning scheme. In its opposition to the motion, the plaintiff contended that, although the form based zoning regulations were legally adopted, the commission was estopped from applying them to the plaintiff's property because of its ongoing efforts to block the development

---

[3] As we noted, Dodds' letter purporting to void the December, 2012 application of the plaintiff was addressed to Kleinman, the attorney for McDonald's. The letter does not indicate that a copy of it was sent to the plaintiff. There is no indication in the record that Dodds ever directly notified the plaintiff of her purported decision to void its application. Because the plaintiff has not claimed that Dodds' letter to an attorney for McDonald's was improper notice to it, we have no occasion to address that matter.

[4] As we indicated, the commission initially adopted this zoning change on December 11, 2012, but the change was invalid after the Superior Court sustained the plaintiff's appeal from the commission's December 11, 2012 adoption of the zone change.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

of the property. The plaintiff also contended that the commission could and should consider the application for a special permit that it had submitted years before the adoption of the form based zoning regulations.

The trial court denied the motion to dismiss without prejudice because it concluded that it required more information before it could decide the mootness issue. The court reasoned that the appeals would not be moot if the plaintiff's application for a special permit was complete when it submitted the supplemental materials to Dodds on October 20, 2014, which, in turn, depended on whether the application complied with all valid zoning regulations at that time. See General Statutes § 8-2h (a) ("[a]n application filed with a zoning commission, planning and zoning commission, zoning board of appeals or agency exercising zoning authority of a town, city or borough which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application"). Because the court was unable to determine at that time whether the application was compliant as of October 20, 2014, it denied the motion to dismiss without prejudice to raising the claim again at trial.

Before trial, the court ordered the parties to submit briefs on the following issue: "Was the plaintiff required to appeal [Dodds'] decision concerning the completeness of its October, 2014 application in order to preserve its rights under that application?" In its brief responding to that question, the plaintiff contended that it was not required to appeal from the decision because Dodds had no authority to void the application and the plaintiff had no avenue of appeal from the decision. The commission contended that, to the contrary, the plaintiff was

Farmington-Girard, LLC *v.* Planning & Zoning Commission

required to appeal from Dodds' decision to the board pursuant to § 8-6 (a) (1). In addition, the commission contended that it was unfair to allow the plaintiff to claim for the first time at that late date in the proceedings that the commission could consider on remand the application that the plaintiff had already filed on the ground that Dodds had no authority to void it.

At trial, the commission did not contest the merits of the plaintiff's claims in the consolidated appeals but contended only that the appeals were moot as the result of the commission's adoption of the form based zoning regulations in 2016. The court asserted that the mootness question turned on a separate matter—whether the plaintiff was required to challenge Dodds' decision voiding its application for a special permit. The court reasoned that, even if the plaintiff was correct that Dodds lacked the authority to void the application, if the plaintiff was required to exhaust its administrative remedies by taking an appeal from her decision to the board and failed to do so, Dodds' decision would stand, the application would be void, and § 8-2h (a) would not apply. Accordingly, the court concluded that whether the plaintiff needed to exhaust its administrative remedies by appealing Dodds' decision to the board was the sole and dispositive issue before it.

The trial court ultimately concluded that the text amendments and zone changes that were the subject of the plaintiff's consolidated appeals were void as the result of defective notices.[5] The court also concluded,

---

[5] Specifically, as to the December, 2014 and April, 2015 public hearings, the trial court concluded that the commission failed to comply with the prehearing notice requirements of General Statutes § 8-3 (a), which requires that a copy of the proposed boundary change be filed with the city clerk at least ten days before the hearing. The court explained that the record contained no filing for the December, 2014 public hearing. As to the April, 2015 public hearing, the proposed text amendment was not filed until four days before the hearing. The court also concluded that the commission failed to comply with § 8-3 (d) by not filing a copy of the map changes in the city clerk's office after the approval. Similarly, with respect to the

Farmington-Girard, LLC *v.* Planning & Zoning Commission

however, that the plaintiff had failed to exhaust its administrative remedies when it failed to appeal Dodds' decision voiding its application for a special permit to the board pursuant to § 8-6. As a result, the court dismissed the appeals.

The plaintiff then appealed to the Appellate Court. Its central contention on appeal was that Dodds lacked the authority to declare the plaintiff's application for a special permit void because the commission has the exclusive authority to act on such applications. See *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, supra, 190 Conn. App. 753. The Appellate Court disagreed. Id., 756. Specifically, the Appellate Court concluded that Dodds had the authority under the city's zoning regulations to declare the application void. Id. The Appellate Court then rejected the plaintiff's claim that it could not have appealed to the board from Dodds' determination because Dodds was not "the official charged with the enforcement"; General Statutes § 8-6 (a) (1); of the city's zoning regulations within the meaning of § 8-6.[6] *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, supra, 756. The court concluded that Dodds' letter was appealable to the board because it was "a clear and definitive interpretation of the regulations regarding an application's required materials . . . that . . . had a legal effect on the plaintiff . . . ." Id., 757–58. Accordingly, the Appellate Court affirmed the judgments of the trial court. Id., 760.

September and October, 2014 public hearings, the court concluded that the commission violated certain statutory notice provisions. The court concluded that the failure to comply with the statutory publication requirements renders any zoning map change void.

[6] General Statutes § 8-6 provides in relevant part: "(a) The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

Farmington-Girard, LLC *v.* Planning & Zoning Commission

The plaintiff filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court properly hold that the plaintiff failed to exhaust its administrative remedies when it did not appeal an unfavorable 'requirement or decision' of the zoning administrator to the [board] concerning the plaintiff's application for a special permit?" *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, 333 Conn. 917, 217 A.3d 2 (2019).

On appeal, the plaintiff contends that the Appellate Court incorrectly determined that (1) the city's zoning regulations conferred authority on Dodds to act on the plaintiff's application for a special permit, and (2) Dodds' determination that the application was void was appealable to the board. We agree with the plaintiff that Dodds lacked the authority to void its application for a special permit. We also conclude that the plaintiff was not required to appeal to the board from Dodds' letter voiding the special permit application because it was not a legal decision within the meaning of § 8-6. Accordingly, we reverse the judgment of the Appellate Court.

Before addressing the merits of the plaintiff's claims, it is necessary to clarify the nature of the issue before this court. As we have explained, both the trial court and the Appellate Court concluded that the trial court lacked jurisdiction over the plaintiff's consolidated appeals from the text amendments and zone changes because the plaintiff failed to exhaust its administrative remedies by not appealing to the board from Dodds' separate determination that the plaintiff's application for a special permit was void.[7] The exhaustion doctrine,

[7] As we noted, the commission actually filed its motion to dismiss the consolidated appeals on the ground that they had become *moot* in light of the commission's adoption of "form based" zoning regulations in 2016 that precluded the plaintiff from constructing a restaurant with a drive-through window on the property. The commission argued that, because the plaintiff did not appeal from this approval, its appeal was moot. In its opposition to the motion, the plaintiff contended that, although the form based zoning

Farmington-Girard, LLC *v.* Planning & Zoning Commission

however, could not form a proper basis for the trial court to conclude that it lacked jurisdiction. The case before the trial court was on the four consolidated appeals dealing with the commission's adoption of the text amendments and zone changes, not the plaintiff's application for a special permit that Dodds had rejected. There is no contention that the plaintiff had failed to exhaust available administrative remedies with respect to the actions by the commission that are the subject of these appeals. Rather, the issue is whether the present consolidated appeals were moot because there would be no practical relief that the trial court could order in those appeals based on the occurrence of an event that is separate from the appeals pending before the trial court. That is, the question is whether the plaintiff's failure to pursue any administrative remedy *in the separate matter* relating to Dodds' decision prevented the trial court from granting relief in these appeals relating to text and zone changes, thereby rendering these appeals moot. See, e.g., *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004) ("[w]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot" (internal quotation marks omitted)). Accordingly, although it does not affect the substance of our analysis of the plaintiff's claims, we clarify that the issues before this court implicate the mootness doctrine, not the exhaustion doctrine.

We now turn to the merits of the plaintiff's claim that the Appellate Court incorrectly concluded that Dodds had the authority to determine that the plaintiff's application for a special permit was void under the city's zoning regulations. As we have explained, the Appellate

regulations were legally adopted, the commission was estopped from applying them to the plaintiff's property because of its ongoing efforts to block the development of the property.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

Court determined that the Hartford Zoning Regulations, as amended to November 12, 2013 (regulations),[8] conferred authority on the city's zoning administrator, Dodds, to determine that the plaintiff's application for a zoning permit was void because it was incomplete. Specifically, the Appellate Court concluded that "[article II, division 1, §§] 66[9] and 67[10] of the regulations . . . give[s] the director of the city's planning division the 'overall responsibility for the administration of the regulations,' and designate[s] the director 'the zoning administrator.' Furthermore, [article II, division 1] § 68[11] of the regulations explicitly provides that a permit may

[8] All references to the city's regulations in this opinion are to the version of the regulations amended to November 12, 2013.

[9] Article II, division 1, § 66, of the regulations provides in relevant part: "(b) The director of planning shall have overall responsibility for the administration of the regulations, and shall be the zoning administrator. . . ."

[10] Article II, division 1, § 67, of the regulations provides in relevant part: "(a) The zoning administrator shall designate an individual to be the zoning enforcement officer. The zoning enforcement officer shall be responsible for enforcement of these regulations, and shall have such powers and duties as are set forth in this article and the general statutes.

"(b) Zoning permits shall be issued by the zoning enforcement officer acting on behalf of the zoning administrator. . . ."

[11] Article II, division 1, § 68, of the regulations provides in relevant part: "(a) Zoning permits shall be required: (1) prior to the issuance of a building permit, by notation on the building permit form, or (2) if no building permit is required, at the time of a change of use. . . . Prior to issuance, the zoning administrator must find that the application and plans conform to all provisions of these regulations. . . .

* * *

"(c) Every application for a zoning permit shall be accompanied by an administrative review plan as well as such information and exhibits as are required in these regulations or may be reasonably required by the zoning administrator in order that the proposal of the applicant may be adequately interpreted and judged as to its conformity with the provisions set forth in these regulations.

* * *

"(e) Every application for a zoning permit, including those associated with an application for a variance or a special permit, shall include the following information and exhibits, which shall constitute the administrative review plan:

"(1) A site plan of the property . . . ."

Farmington-Girard, LLC *v.* Planning & Zoning Commission

not issue until the *zoning administrator* finds that the application and plans conform to all provisions of the regulations. Finally, [article IV, division 2] § 913[12] of the regulations, on which the plaintiff relies, requires compliance with § 68.'' (Emphasis in original; footnotes added.) *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, supra, 190 Conn. App. 755–56.

''Because the interpretation of the regulations presents a question of law, our review is plenary. . . . We also recognize that the zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results.'' (Citations omitted; footnote omitted; internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715–16, 960 A.2d 1018 (2008).

We conclude for the following reasons that the regulations did not authorize Dodds to determine that the plaintiff's application for a special permit was void.

---

[12] Article IV, division 2, § 913, of the regulations provides in relevant part: ''(a) The zoning administrator shall refer each application for an eating place with drive-in or curb service in the B-3 zoning district to the commission. The application shall be filed and acted on in accordance with the procedures set forth in section 68 (relating to applications for zoning permits). . . .

* * *

''(c) In receiving such proposal the commission shall consider all aspects of the proposal as set forth in this section . . . .

''(d) Every application for a special permit for a restaurant with drive-in or curb service shall be filed and acted on in accordance with the provisions of section 68 (relating to applications for zoning permits).''

Under the regulations, restaurants with drive-in or curb-side service were authorized as a special permit use in the B-3 zone. In turn, once such a special permit application is filed by an applicant, § 913 (a) of the regulations provides in relevant part that "[t]he zoning administrator shall refer each application for an eating place with drive-in or curb service in the B-3 zoning district to the commission. . . ." Similarly, article II, division 4, § 163 (h), of the regulations provides in relevant part that "[a]ll projects requiring a special permit as outlined in the table of permitted uses shall be referred to the [c]ommission for review." As the Appellate Court observed, § 913 (a) also provides that special permit applications for eating places with drive-in services "shall be filed and acted on in accordance with the procedures set forth in section 68 (relating to applications for zoning permits)." See *Farmington-Girard, LLC* v. *Planning & Zoning Commission*, supra, 190 Conn. App. 754. Section 68 of the regulations governs not only applications for zoning permits generally, but also, in a separate subsection, applications for special permits. See Hartford Zoning Regs., art. II, div. 1, § 68 (g) (amended to November 12, 2013) ("Special permit applications. Whenever a special permit is applied for under these regulations, the following procedures shall govern the application and decision process . . . ."). Applications for special permits are a distinct category from applications for zoning permits, and different standards apply to them. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 6:6, p. 216 ("zoning permit is required for any land use project or construction," and, if application meets requirements of zoning regulations, such as setback requirements, zoning enforcement officer has no discretion to deny permit); see also id., § 3:8, p. 41 (special permits allow "some individual treatment of applications, by allowing particular types of uses only after a

Farmington-Girard, LLC *v.* Planning & Zoning Commission

special permit has been obtained from the agency, guided by standards contained in the zoning regulations''); id., § 5:4, p. 197 (agency charged with reviewing special permit application ''has reasonable discretion to decide whether a particular section of the zoning regulations applies in a given situation and how it applies'').

''[I]t is a [well settled] principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling.'' (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 302, 21 A.3d 759 (2011). We conclude, therefore, that the provision of § 68 (a) of the regulations— which applies to ''zoning permits''—requiring the zoning administrator to ''find that the application and plans conform to all provisions of these regulations,'' applies *only* to applications for general zoning permits, which must be granted as of right if they conform to all existing regulations, and not to applications for special permits, which require the exercise of some discretion by the board or commission charged with acting on such applications. Indeed, when the drafters of the regulations intended to make the provisions governing applications for zoning permits applicable to applications for special permits, they knew how to make that intention clear. See, e.g., Hartford Zoning Regs., art. II, div. 1, § 68 (e) (amended to November 12, 2013) (''[e]very application for a zoning permit, *including those associated with an application for . . . a special permit*, shall include the following information and exhibits'' (emphasis added)).

As we explained, § 163 (h) of the regulations provides that ''[a]ll projects requiring a special permit as outlined in the table of permitted uses shall be referred to the [c]ommission for review'' pursuant to the procedures

Farmington-Girard, LLC *v.* Planning & Zoning Commission

set forth in § 68 (g) of the regulations. This procedure is consistent with the enabling statutes, which authorize only zoning commissions and certain other specifically enumerated bodies to act on applications for special permits. See, e.g., General Statutes § 8-3c (b) ("The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit . . . as provided in section 8-2 . . . . Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. Whenever a commission grants or denies a special permit . . . it shall state upon its records the reason for its decision."); see also, e.g., General Statutes (Rev. to 2013) § 8-2 (a) ("[the zoning] regulations . . . may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit . . . from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values"). Nothing in § 68 (g) of the regulations or the enabling statutes suggests that zoning administrators have any authority to act, authoritatively, definitively, or for any reason, on an application for a special permit. We conclude, therefore, that Dodds did not have the authority to determine that the plaintiff's application for a special permit was void because it was incomplete.[13]

---

[13] We note that the commission has cited no authority that would support the assertion that an incomplete application for a special permit is necessarily a void one. Should an applicant choose not to provide any supplemental information as identified by the zoning administrator, it may do so at its own risk that the commission may ultimately agree with the zoning administrator. Regardless, the final dispositive action on an incomplete application is the legal duty of the commission, not the administrator.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

We next address the question of whether the plaintiff was required to appeal to the board from Dodds' letter purporting to void the application for a special permit. We conclude that it was not.

Whether § 8-6 authorized the plaintiff to appeal to the board from Dodds' action is a question of statutory interpretation over which our review is plenary. See, e.g., *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 694, 189 A.3d 79 (2018). We review § 8-6 in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., id.

We begin with the language of § 8-6. Section 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

The plaintiff contends that it was not required, or, indeed, authorized, to appeal to the board from Dodds' determination that its application for a special permit was void because § 8-6 applies only to *enforcement decisions*, and a decision voiding a special permit application is not an enforcement decision. In support of this contention, the plaintiff relies on a number of cases holding that a decision by a zoning commission or combined planning and zoning commission that enforces the zoning laws is appealable to the board pursuant to § 8-6, in contrast to decisions made by a commission in its legislative capacity, or on applications for special permits, which are appealable directly to the Superior Court pursuant to General Statutes § 8-8.[14] See, e.g.,

_____

[14] General Statutes § 8-8 provides in relevant part: "(b) Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3 or a

Farmington-Girard, LLC *v.* Planning & Zoning Commission

*Conto* v. *Zoning Commission*, 186 Conn. 106, 110–11, 117, 439 A.2d 441 (1982) (because town's zoning regulations required zoning commission to act on applications for permitted use, except for single family residences, and because commission's function was "to determine whether the applicant's proposed use [was] one which satisfies the standards set forth in the regulations and the statutes," commission's decision approving application was enforcement decision appealable to board (internal quotation marks omitted)); *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 408–409, 755 A.2d 224 (because agency considering site plan application "has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated into the site plan regulations by reference," planning and zoning commission's grant of application constituted enforcement of regulations and was appealable to board), cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000);[15] *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 27 Conn. App. 412, 416–17, 606 A.2d 725 (1992) (because zoning regulations "may be enforced by a refusal of a building or occupancy permit [when] the construction or use of the land in question is not in compliance with the pertinent regulations," planning and zoning commission's refusal to approve site plan was appealable to board pursuant to

special permit or special exception pursuant to section 8-3c, may take an appeal to the superior court for the judicial district in which the municipality is located . . . ."

　Although § 8-8 was the subject of certain amendments in 2015; see Public Acts 2015, No. 15-85, § 2 (amending subsection (*l*)); and 2019; see Public Acts 2019, No. 19-64, § 24 (amending subsection (o)); those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

　[15] We note that the legislature amended § 8-8 (b) in 2002 to provide that an aggrieved person may appeal to the Superior Court from the decision of a planning and zoning commission to approve or deny a site plan. See Public Acts 2002, No. 02-74, § 2.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

town regulation analogous to § 8-6 (internal quotation marks omitted)), rev'd on other grounds, 225 Conn. 432, 623 A.2d 1007 (1993). Because rulings on special permit applications are appealable to the Superior Court, the plaintiff argues, they are not "enforcement decisions" subject to § 8-6. The plaintiff further contends that it did not appeal from Dodds' letter purporting to void the plaintiff's application to the Superior Court pursuant to § 8-8 because "the letter had no legal effect."[16]

Although we do not entirely agree with the plaintiff's analysis, we conclude that Dodds' letter was not appealable to the board. Contrary to the plaintiff's contention that action on a special permit application is not an "enforcement decision," this court held in *Jewett City Savings Bank* v. *Franklin*, 280 Conn. 274, 277–78, 285, 907 A.2d 67 (2006), that a decision by a planning and zoning commission approving or denying an application for a special permit is appealable to the board pursuant to § 8-6 because the commission is acting pursuant to its capacity as a zoning enforcement agency when it makes that decision. See id., 283, 285 (when planning and zoning commission acted on application for special permit, "commission was enforcing its regulations," and decision was, therefore, appealable to board).[17]

---

[16] We further note that § 8-8 does not authorize appeals from decisions of zoning administrators. See General Statutes § 8-8 (a) (1) (defining "aggrieved person" in relevant part as "a person aggrieved by a decision of a board"); General Statutes § 8-8 (a) (2) (defining "board" in relevant part as "a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section").

[17] In response to this decision, the legislature amended § 8-8 (b) in 2007 to provide in relevant part that an aggrieved person may appeal to the Superior Court from "a decision to approve or deny . . . a special permit . . . pursuant to section 8-3c . . . notwithstanding any right to appeal to a municipal zoning board of appeals under section 8-6. . . ." Public Acts 2007, No. 07-60, § 1 (P.A. 07-60), codified at General Statutes (Supp. 2008) § 8-8 (b); see also Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 3, 2007 Sess., p. 766, remarks of Charles Andres, Chairman of the Planning and Zoning Section of the Connecticut Bar Association (proposed legislation was result of decision in *Jewett City Savings Bank*).

Farmington-Girard, LLC *v.* Planning & Zoning Commission

We agree with the plaintiff, however, that Dodds' letter purporting to void the plaintiff's application for a special permit was not appealable either to the board or to the Superior Court because it was not a legal decision made by the official charged with the enforcement of the city's regulations governing applications for special permits but, rather, a null and void ultra vires act.[18] See *Wellswood Columbia, LLC* v. *Hebron*, 295 Conn. 802, 824, 992 A.2d 1120 (2010) ("ultra vires acts . . . are void ab initio"); see also *Walgreen Eastern Co.* v. *Zoning Board of Appeals*, 130 Conn. App. 422, 426, 24 A.3d 27 ("appeals under § 8-6 may be taken from decisions made by someone other than the designated zoning enforcement officer, if that other person in fact exercised, *and was authorized to exercise*, the relevant authority" (emphasis added)), cert. denied, 302 Conn. 930, 28 A.3d 346 (2011). As we explained, under both the applicable regulations and associated enabling

---

The legislature did not, however, prohibit appeals to the board pursuant to § 8-6 from decisions by planning and zoning commissions on applications for special permits. See General Statutes § 8-8 (b) (person aggrieved by commission's decision on special permit application may appeal to Superior Court pursuant to § 8-8 "notwithstanding any right to appeal to a municipal zoning board of appeals under section 8-6"). Thus, contrary to the plaintiff's contention, P.A. 07-60 did not overrule our holding in *Jewett City Savings Bank* that a decision by a planning and zoning commission approving or denying a special permit application is made in the commission's capacity as an enforcement agency. Rather, the legislature provided only that that particular enforcement decision may be appealed directly to the Superior Court pursuant to § 8-8 without first appealing to the board.

[18] Specifically, article II, division 1, § 67 (a), of the regulations provides that the zoning administrator, in this case Dodds, "shall designate an individual to be the zoning enforcement officer." Subsection (a) of § 67 goes on to explain that "[t]he zoning enforcement officer shall be responsible for enforcement of these regulations . . . ." Section 8-6 (a) (1), in turn, provides that the board has the power to hear and decide appeals only when "it is alleged that there is an error in any order, requirement or decision *made by the official charged with the enforcement* of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." (Emphasis added.) Because it was the zoning enforcement officer, and not Dodds, who was charged with the enforcement of the regulations, the board had no authority to consider an appeal from Dodds' ultra vires act.

Farmington-Girard, LLC *v.* Planning & Zoning Commission

statutes, only the commission has the authority to act on such applications. Thus, there has not yet been a legal decision on the application from which the plaintiff could have appealed.[19]

Because Dodds' letter purporting to void the plaintiff's special permit application had no legal effect, we conclude that the plaintiff's consolidated appeals are not moot and that the Appellate Court incorrectly determined that the trial court properly dismissed the plaintiff's appeals for lack of subject matter jurisdiction. In addition, because the commission has not cross appealed from the trial court's holding that the commission's adoption of the text amendments and zone changes were void as the result of defective notice, that decision stands.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to render judgments sustaining the plaintiff's consolidated appeals.

In this opinion the other justices concurred.

---

[19] We further note that § 8-3c (b) requires that notice of a decision on a special permit application "shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for [the] special permit . . . ." In the present case, Dodds sent the letter to Kleinman, an attorney for McDonald's. There is no evidence that notice was sent to the plaintiff or published in a newspaper. Moreover, the commission has cited no authority for the proposition that the incompleteness of a special permit application is grounds for unilaterally voiding it without a hearing. We recognize that such defects in a decision *by the commission* might be grounds for an appeal pursuant to § 8-6 or § 8-8, but, in the present case, there was no such decision.